Patricia **HELFRICK** and Charles E. Helfrick, Plaintiffs-Appellants,

v.

Agnes **TAYLOR**, Defendant-Respondent.

No. 53702.

Supreme Court of Missouri, Division No. 2.

May 12, 1969.

As Modified on Court's Own Motion May 20, 1969.

Gerritzen & Gerritzen, by Ray A. Gerritzen, St. Louis, for plaintiffs-appellants.

George E. Lee, St. Louis, for defendant-respondent, Carter, Bull, Baer, Presberg & Lee, St. Louis, of counsel.

FINCH, Presiding Judge.

This is an appeal from a judgment in favor of defendant in a suit wherein plaintiff Patricia Helfrick sought in Count I to recover $15,000 for personal injuries received when she fell in the vestibule of defendant's apartment building, and her husband sought in Count II to recover $5,000 for expenses and loss of consortium. The jury found for defendant on both counts and the trial court overruled plaintiffs' motion for new trial. We affirm.

The petition alleged that the tile floor of the vestibule where plaintiff[1] fell was in a cracked, broken and defective condition so that the floor was not reasonably safe. It further alleged failure on the part of defendant to inspect and discover the condition, failure to remedy or repair the floor, failure to provide light in the vestibule, and failure to warn plaintiff of the condition of the floor. Defendant's answer consisted of a general denial and a plea of contributory negligence.

The front entrance to the building where plaintiff fell is on ground level. The door opens from left to right into a small vestibule which is approximately five feet deep. Opposite the front door are four steps leading to the first floor landing plus a section of wall on which mail boxes are located. The steps are to the left as one entered the front door. There was no light in the ceiling of the vestibule itself but there was a light in the ceiling of the first floor landing. It consisted of a 25-watt bulb in an open lattice type plastic fixture. This light shone down the four steps into the vestibule, but witnesses described the light in the vestibule itself as dim.

At about 4:00 p. m. on the afternoon of December 9, 1965, plaintiff, with her two-year-old son, came to defendant's apartment building at 1510 Wellston Avenue in St. Louis to pick up a friend, Mrs. Kenney, to go shopping. Plaintiff came into the front vestibule and then up the four steps to the first floor landing where she entered the apartment of Mrs. Kenney. Shortly, the three of them went on a shopping trip.

They returned to the apartment building at about 8:00 p. m. Mrs. Kenney first got out of plaintiff's automobile and went to get her grocery cart, latching the front door open as she did so. After she had placed her groceries in the cart she went back up the sidewalk and into the apartment building.

Plaintiff had planned to park and lock her car and then come in with her young son to visit, but after Mrs. Kenney started into the apartment the plaintiff changed her mind and decided to go on home. She left her son in his car seat and walked up the sidewalk to the front door to tell Mrs. Kenney of her change in plans. At the time plaintiff reached the open front door, Mrs. Kenney, pulling her grocery cart up behind her, had negotiated the steps and was just reaching the first floor landing. Plaintiff stepped on the threshold of the door and then stepped inside, calling out Mrs. Kenney's name preparatory to telling of her decision. As plaintiff stepped inside, she caught the heel of her strollers and fell to the vestibule floor. Plaintiff is a large woman, being 5 feet 6½ inches in height and weighing 290 pounds. She testified that she was not looking where she was going at every step and did not see that any tile were missing in the floor when she stepped into the vestibule. She stated that after she fell, she looked and saw a place right inside the threshold where tile were missing in about a four-inch area.

Mrs. Kenney testified that in the fall of 1964 a carpenter had been sent by the defendant to do some repair work on the bottom of the front door to stop an excessive draft of cold air coming in under the door. She stated that after the carpenter placed an additional strip on the bottom of the door it was dragging on the tile and that the carpenter took his hammer and broke and

---

1. When the singular term "plaintiff" is used, it has reference to Patricia Melfrick.

removed some of the octagonal tile adjacent to the vestibule. She testified that tile had been missing from that spot for more than a year. A sister of Mrs. Kenney did not remember how long the tile had been missing but testified that they were missing prior to the plaintiff's fall, and that she had tripped over the place on one occasion.

The carpenter who had done the work on the front door testified and he denied breaking or removing any of the floor tile when he did that work. In addition, the defendant testified that to her knowledge there were no missing tile prior to December 9, 1965.

There was evidence that defendant's husband (deceased at the time of trial) had put some cement over tile near the threshold a few days after the plaintiff fell.

The testimony disclosed that plaintiff was a long time friend of Mrs. Kenney and had visited her at her apartment on the average of once a week over the several years while Mrs. Kenney had lived there. Plaintiff testified, however, that she had never noticed any missing tile. In addition, she testified that she had not noticed the condition of the tile on the afternoon of December 9, 1965, when she went into and out of the apartment at about 4:00 p. m.

The principal points advanced by plaintiffs on this appeal are alleged error in the giving of Instruction No. 8 (a contributory negligence instruction) and in alleged prejudicial argument by counsel for defendant. However, plaintiffs also advance as their last point the contention that the trial court should have sustained their motion for a directed verdict for plaintiffs, subject only to a determination by the jury as to the amount of damages. We consider this last point first because, if correct, it would dispose of this appeal.

The cases cited by plaintiffs on this issue all relate to the character of duty owed by a landlord with respect to public areas such as common entryways, stairways, elevators and halls. None are cases in which an appellate court has held that a motion for a directed verdict by a plaintiff should have been sustained. None of these cases purport to have ruled on that question.

The well established rule in this state is that in a situation where a plaintiff relies on oral testimony to recover it is very seldom that a trial court would be justified in directing a verdict for plaintiff. In Beezley v. Spiva, Mo., 313 S.W.2d 691, 695, this court said: "Ordinarily it is the function of the jury to pass upon all oral evidence, and in doing so it may find against a party on his uncontradicted and unimpeached evidence. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558. And, indeed, it is at least very seldom that a trial court is justified in directing a verdict in favor of a party having the burden of proof where the case depends upon oral testimony." See also Schaefer v. Accardi, Mo., 315 S.W.2d 230, 233, and Daly v. Schaefer, Mo.App., 331 S.W.2d 150.

Here, plaintiffs rely on oral testimony to recover. Defendant did not make a judicial admission of the existence of facts which would establish her liability to plaintiff as a matter of law. As a matter of fact, there was conflicting testimony about the condition of the tile and about what the carpenter had done with reference to such tile. It was for the jury to weigh that testimony. In addition, the defense of contributory negligence was asserted and there was evidence pertinent to that issue. Under all of these circumstances, it was not error for the trial court to overrule plaintiffs' motion for a directed verdict.

Plaintiffs' next complaint pertains to the giving of Instruction No. 8 at the request of the defendant. That instruction was as follows:

"Your verdict must be for the defendant, Agnes Taylor, as to the claims for damages of plaintiffs, Patricia Helfrick

and Charles E. Helfrick, whether or not defendant was negligent if you believe:

"First, plaintiff Patricia Helfrick, failed to keep a careful lookout;

"Second, plaintiff's conduct, as submitted in paragraph First, was negligent; and

"Third, such negligence of said plaintiff directly caused or directly contributed to cause any damage plaintiffs may have sustained."

Defendant indicated that Instruction No. 8 was a modification of MAI Instruction 28.01. The caption of that instruction in MAI is "Contributory Negligence—Generally". MAI provides no separate contributory negligence instruction for use in landlord-tenant or similar cases. Consequently, under the instructions relative to the use of MAI, it was appropriate for plaintiffs to modify Instruction 28.01 for use in this case.

Plaintiffs' complaint focuses on the use in the instruction of the words "failed to keep a careful lookout". It is plaintiffs' position that these words involve and imply the use of the highest degree of care rather than ordinary care, and hence the instruction was erroneous.

Plaintiffs cite cases which state the well established rule that the obligation of a tenant (or his invitee) in utilizing areas in an apartment building provided for common use is to use ordinary care. For example, in Winters v. Hassenbusch, Mo.App., 89 S.W.2d 546, 550, the court, in speaking of the obligation of plaintiff, said: "She was not required to stare or gaze through the darkness at each step as she went down, but to use ordinary care to observe generally where she was walking, as persons ordinarily would do under similar circumstances." This court in Baron v. Aftergut, Mo., 387 S.W.2d 535, 537, approved this rule, saying:

2. Instruction No. 3 was as follows:
"The term 'ordinary care' as used in these instructions means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

"* * * plaintiff was required to exercise ordinary care on her part in the use of the premises, Winters v. Hassenbusch, Mo. App., 89 S.W.2d 546, 550 [4], * * *." The rule is, as plaintiff asserts, that the duty of plaintiff in utilizing the vestibule of the apartment was to use ordinary care. The question is whether Instruction No. 8 told the jury that it was plaintiff's duty to use some standard of care other than ordinary care in looking where she was going.

Instruction No. 8 does not use the terms "ordinary care" or "highest degree of care". The instruction requires only that the jury find the plaintiff failed to keep a careful lookout, that this was negligent, and that such negligence caused or contributed to cause plaintiff's damage. However, in Instruction No. 3, given at the request of plaintiff and taken from MAI 11.05 and 11.02,[2] the jury was told that "negligence", when used in the court's instructions, "means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances". Thus, Instruction No. 3 told the jury that the failure to keep a careful lookout under Instruction No. 8 meant a failure to use ordinary care, the standard prescribed in Winters v. Hassenbusch, supra, and Baron v. Aftergut, supra.

The words "careful lookout" do not in and of themselves mean "highest degree of care". It is true that in automobile cases the jury is told specifically that the term "negligence" as used in the instructions in that case means a failure to use the highest degree of care. Hence, in an automobile case a "careful lookout" involves that degree of care which a very careful and prudent person would use under the same or similar circumstances. This is true because the instruction defining "negligence" in that case specifically so states. However, neg-

"The term 'negligence' as used in these instructions means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

ligence is not always a failure to exercise the highest degree of care. "Negligence" can be and is defined differently in other types of cases. In landlord-tenant cases it is defined as "failure to exercise ordinary care". Just as "negligence" may be defined differently in automobile and landlord-tenant cases, so "careful lookout" may have a different meaning. In the instant case it was properly defined as "failure to use ordinary care" because that is the way "negligence" was defined.

We are sure that the jury was not misled by the language of Instruction No. 8. The transcript on appeal discloses that when counsel for plaintiff was arguing this case to the jury, he discussed plaintiffs' verdict-directing Instruction No. 4. It told the jury to find for the plaintiff if they found certain things as therein set out, and then concluded with the words "unless you believe plaintiff, Patricia Helfrick, is not entitled to recover by reason of Instruction No. 8". Mr. Gerritzen read that qualifying clause to the jury and then said: "Instruction No. 8 tells you that she failed to use ordinary care and failed to keep a careful lookout. And we go back to ordinary care as the definition which is I think Instruction 3, failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Counsel interpreted "careful lookout" as meaning a failure to exercise ordinary care, and specifically so stated to the jury. In our opinion, that was a fair and proper interpretation of the language in Instructions 8 and 3.

■ We hold that Instruction No. 8 was not erroneous. It did not conflict with Instruction No. 3. As a matter of fact, Instruction No. 3 was necessary to tell the jury what the term "negligence" as used in Instruction No. 8 meant. Its use was mandatory. See Notes on Use following MAI 11.02. See also the illustrations on use of instructions in MAI 31.01, 31.02, 31.03 and 31.04, all of which include an instruction defining "negligence".

■ Plaintiff makes the additional point that it was error to give Instruction No. 8 because "there was absolutely no evidence from which a jury could infer contributory negligence on the part of Patricia Helfrick and there was particularly no evidence upon which to base an instruction that Patricia Helfrick failed to keep a careful lookout". We do not agree. The evidence disclosed that as plaintiff entered the vestibule she did not observe what it was that caused her to fall. She testified that she was not looking at each step she took and, as a matter of fact, she told of observing her friend as she entered the vestibule. Mrs. Kenney was in the act of going up the steps, pulling her grocery cart behind her, and she had either reached or was just about to reach the landing. Plaintiff then said to her, "Rose," and was going to tell of her decision to go on home, but at just about that time she fell. After she had fallen and was on the floor, she observed that the wooden threshold itself was about one-half inch high and that adjacent to it were some missing tile, but she had not observed these things until after she had fallen. Under this evidence, the issue of whether plaintiff exercised ordinary care was one for the jury to determine. As this court said in Walker v. Niemeyer, Mo., 386 S.W.2d 87, 93, after holding that the issue of contributory negligence could not be decided therein as a matter of law: "On the record presented the issues of negligence and contributory negligence were for the jury."

Finally, plaintiff claims reversible error by the trial court in connection with its rulings on argument of defense counsel to the jury.

■ In connection with the questions raised about counsel's argument, the plaintiff, on motion for rehearing, subpoenaed various jurors and had them testify with reference to the deliberations of the jury and whether they took into consideration the language about finding something "to their satisfaction". In State v. Ferguson, 353 Mo. 46, 182 S.W.2d 38, this court held

that a juror cannot impeach his own verdict. In so ruling, the court said, l. c. 45: "As was pointed out in the Reich case [Reich v. Thompson, 346 Mo. 577, 142 S. W.2d 486, 492, 129 A.L.R. 795] a 'juror will not be heard to impeach' his and the jury's verdict, either as to conduct inside or outside the jury room, either before or after their discharge. State v. Bailey, 344 Mo. 322, 126 S.W.2d 224; State v. Keller, Mo. Sup., 104 S.W.2d 247." In the recent cases of McDaniel v. Lovelace, No. 53,574, and The Fidelity and Casualty Company of New York v. Western Casualty and Surety Company, decided April 14, 1969, in a single opinion, Mo., 439 S.W.2d 906, the above language was quoted with approval. Consequently, we do not consider the testimony of these jurors in the determination of this question.

The incident involving argument of which plaintiff complains occurred as follows:

"The plaintiff, as the Court has told you in Instruction No. 2, the plaintiff comes into this courtroom with a burden. It is not presumed that she's entitled to recover simply because she makes a claim. The law tells you that plaintiff must prove her case. She must prove to your satisfaction. She must prove to cause you—

"MR. GERRITZEN: I'm going to object to that, Your Honor. I'm going to ask that the jury be instructed to disregard it. I want to make a record on this. Bring your book up, please.

"MR. LEE: Well, now let me make a statement. The word, 'satisfaction,' if he objects to that, I withdraw—"

Mr. Gerritzen then interrupted and asked to make his record. He requested that the jury be instructed to disregard the statement and also asked for a mistrial, which the trial court denied.

Thereupon, Mr. Lee undertook to make an explanation, to which Mr. Gerritzen objected. The court then said to the jury:

"To clarify the matter in the mind of the jury with respect to the direction and the caution that you received, they are within the instructions that you have here. This is your course of conduct. The argument of counsel as we have indicated earlier is argument of counsel. The evidence is the evidence you heard from the witness stand. This should be clear and the Court doesn't wish to comment any further. You may proceed."

Next, Mr. Lee said, "Let me read to you the instruction—" Mr. Gerritzen interrupted and again, out of the presence of the jury, moved that the jury be instructed to disregard any burden to prove anything to their satisfaction, and also moved for a mistrial, which the court overruled, saying he had already instructed the jury.

Thereupon, Mr. Lee proceeded to read Instruction No. 2 (MAI 3.01), the burden of proof instruction, to the jury. After doing so, he proceeded to say: "If you do not believe that the defendant was negligent in this case, then you cannot find in favor of the plaintiff. Now what does it involve when you believe something? It is that you know from what you heard in the evidence you have reached an opinion that this is the fact that you believe. You either believe it or you do not believe it. If you have any doubt about it, you do not believe it. It's as simple as that."

Mr. Gerritzen objected to the statement that if you have any doubt you don't believe it and asked that the court instruct the jury to disregard the statement. He also asked for a mistrial. The objection and motion were overruled.

■ The use of the words "to your satisfaction" in argument to the jury has been disapproved. Manley v. Horton, Mo., 414 S.W.2d 254, 259. They should not have been used here. However, we have concluded that on the complete record of what occurred, there was not reversible error. In the first place, when the objection was made, Mr. Lee sought to withdraw the word "satisfaction", but Mr. Gerritzen interrupt-

ed and sought a ruling on his objection. The court then told the jury to follow the instructions and that argument of counsel was just argument of counsel. It would have been preferable if the court had done as this court indicated in Manley v. Horton, supra, 414 S.W.2d 1. c. 259, "The Court could and should have eliminated all question by a simple statement to the jury that 'satisfaction' was not the proper test of the burden of proof", but we cannot say that the directions the court did use, resulted in reversible error being present.

 The trial court is in a better position than are we to appraise the effect of argument to the jury. It is allowed considerable discretion in permitting or restraining counsel's argument. We do not interfere with the trial court's action in that respect unless we find an abuse of discretion. Collins v. Cowger, Mo., 283 S.W.2d 554; Kiger v. Terminal R. Assn. of St. Louis, Mo., 311 S.W.2d 5. The trial court considered this matter at the time of the incident and again on motion for new trial. It found no prejudicial error and declined to award a new trial. We defer to that holding because we do not find an abuse of discretion.

This leaves only the question with reference to counsel's further statement in arguing Instruction No. 2 that "if you have any doubt about it, you do not believe it". This was an oversimplification and did not accurately state what the burden of proof instruction says. The language of the instruction is that, "If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition." It would have been preferable if the trial court had said to the jury that Instruction No. 2 correctly stated the burden of proof test to be followed and that the jury should utilize

it rather than following counsel's statement, but we cannot say that the trial court abused its discretion in refusing to award a new trial on account of this statement. We overrule this contention.

The judgment is affirmed.

MORGAN, J., and POWELL, Special Judge, concur.

DONNELLY, J., not sitting.