Thomas Michael **CUNNINGHAM**, a minor, by His Next Friend, Charlotte Cunningham, Woodrow Cunningham and Charlotte Cunningham, Plaintiffs-Respondents,

v.

Kenneth L. **HAYES**, d/b/a Marshall Auto Salvage, Defendant-Appellant.

No. 25388.

Kansas City Court of Appeals, Missouri.

Feb. 1, 1971.

Donald S. Huff, Huff & Huff, Marshall, for plaintiffs-respondents.

A. Lamkin James, James & Butterfield, Marshall, Christian F. Stipp, Carrollton, for defendant-appellant.

SHANGLER, Presiding Judge.

Plaintiff Thomas R. Cunningham, then seventeen years of age, was seriously injured on premises occupied and used by defendant Kenneth L. Hayes in the conduct of his auto salvage business. Suit was brought on the minor's behalf, as well as their own, by his parents. Verdicts totalling $15,000 were returned for plaintiffs and judgment was entered accordingly. Thereafter, the trial court, having concluded it had committed error both in having failed to instruct on measure of damages and in having failed to define "negligence" as used in plaintiffs' verdict-directing instructions, ordered a new trial on defendant's motion. Plaintiffs appeal from that judgment. Defendant Hayes appeals from the denial of his alternative motion to have judgment entered in accordance with his motion for directed verdict.

Defendant's business premises, located in the City of Marshall, Missouri, consisted of an office and ten acre expanse used as a salvage yard. No barrier separated them, so there was unimpeded access from the office, located at one end of the yard, to the yard itself. The record does not disclose any other physical characteristics of the premises, but none is needed for an informed determination of the issues.

The minor plaintiff, Thomas, had purchased the frame of a dune buggy (a vehicular contrivance of sorts) and had arranged with defendant to remove the engine from it. The price had been settled on. Since it was to have been available on the day of the casualty, plaintiff had come to see about delivery. (Actually, the work had not yet been done.) When he arrived at defendant's office, both defendant and Gary, his minor son then in his employ, were there, but before plaintiff's business could be acted on, another customer inquired after a gas tank and muffler from a 1959 Ford. Defendant told Gary to fetch those parts from the salvage yard. Quick to do as bidden, Gary went from the office onto the adjoining yard, accompanied by Thomas who had not been expressly invited to so do. (Thomas and Gary, obviously acquainted, were classmates.) Thomas had heard defendant's direction to Gary and was aware that Gary's intended purpose in going onto the salvage yard had only to do with parts from a 1959 Ford and nothing to do with his dune buggy. Nevertheless, since Gary had not explicitly told him he should not, and otherwise piqued by curiosity, Thomas followed him, the two of them "just talking" as he did. The nature and sequence of these events are not questioned. The balance of the testimony given both by Thomas and Gary bearing on the occurrence, although equally compatible, is best treated separately.

The minor plaintiff testified that he previously had been to defendant's premises on at least two or three occasions to purchase automobile parts and at those times had seen customers "at the salvage yard * * * back in the yard sometimes". On the day of the casualty, the 1959 Ford from which parts were to be retrieved was

located 25 or 30 feet from the office. After having accompanied Gary from the office onto the yard, he saw Gary get into a wrecker (which he described as "an old truck with some booms on it out towards the back and a cable and everything"), back it up to the car, "connect the cable" and "hook up the wrecker" to the Ford and raise it about four feet above the ground. As suspended, the Ford was poised over four wheels, two of which had been positioned underneath each side, "up toward the middle of the car". Thomas understood this was meant as a safety measure. Gary then placed himself beneath the Ford in preparation for his task. Thomas "crouched down" or "stooped" so that his head intruded beneath the back end of the car so that he might "see what (Gary) was doing and to talk with him". When asked upon cross-examination whether he knew "it was dangerous to crouch down or crawl under a car that is raised like that", he said only: "I never thought too much of it". As Gary was making ready to use his tools, but without having actually done so, and without apparent motivation, the car fell on Thomas' neck and shoulder. Thomas could not say what caused the car to fall.

Gary testified that he had worked in his father's salvage business for more than two years preceding the occurrence. During that time, at his father's direction, he had "hooked up cars on this wrecker * * * and lifted them up several times before". He acknowledged that customers were not permitted to "walk about the yard" unless accompanied by an employee. As to the salvage procedure involving the 1959 Ford, he had "just wrapped the cable around the frame and hooked the hook around the cable", as he had done times before. He then lifted the car, and as a safety precaution placed two or three wheels under it "just in front of the rear end". The car was left "raised in the air". He crawled under the car and was so placed that he was looking up at "the underside of the car". Although he could not see Thomas from there, he had been talking to

him and could tell he was at the rear of the car. Gary commenced loosening the bolts and clamps around the muffler and as he did, the car fell. Not until then did he realize that Thomas had been underneath the car and was now pinned by it to the ground. Gary came around, found that the cable had "come unhooked", refastened it, raised the car once again and extricated Thomas. Gary had no idea why the car fell.

Defendant Hayes' appeal raises the issue whether the trial court erred in failing to enter judgment for defendant in accordance with his motion for directed verdict which asserted only: "(U)pon the facts and law plaintiffs have shown no right to relief". So, the decisive question is: Does the evidence raise a duty to plaintiffs, a breach of which is shown? If so, may plaintiffs recover for such breach under res ipsa loquitur, pleaded and submitted?

Under Missouri decisions, the status of a person going upon land in the possession of another, in most instances, continues to be decisive in the determination of the duty owed him by the possessor. Wolfson v. Chelist, Mo., 284 S.W.2d 447, 452; Gruetzemacher v. Billings, Mo., 348 S.W.2d 952, 956[2]; Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1 [1–3]. The classifications of status found are usually trespasser, or licensee, or invitee, according to the supposed relationship between the possessor and entrant. Richey v. Kemper, Mo., 392 S.W.2d 266, 268 [1–3]. If the entry was without consent or other privilege given by the possessor, the entrant is a trespasser; if with express or implied consent, but for the entrant's own purposes, he is a licensee; and if the entry was for some real benefit to the possessor, then the entrant is an invitee—and a different duty of care is owed to each. McVicar v. W. R. Arthur & Co., Mo., 312 S.W.2d 805, 811–812 [1]; Gilliland v. Bondurant, 332 Mo. 881, 59 S.W.2d 679, 687 [11–14]; Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820, 823 [5, 6]. These classifications have been further refined.

These distinctions, cultivated in the common law, "were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism". Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S.Ct. 406, 410, 3 L.Ed.2d 550. The courts have encountered some difficulty in rationally adapting these static classifications to the dynamic and complex personal and economic relationships of an industrial, urban age. Our own courts have met this difficulty by perpetuating the terminology of classification "long employed by the profession and by the courts" (Wolfson v. Chelist, 284 S.W.2d l.c. 452), while at the same time freely transcending such common-law categories (and thus, the concomitant standard of care) when the justice of the case required. Salanski v. Enright, Mo., 452 S.W.2d 143, 145 [2]; McVicar v. W. R. Arthur & Co., 312 S.W.2d l.c. 812 [2–5]; Anderson v. Welty, Mo. App., 334 S.W.2d 132, 136 [5]. In doing so, these decisions have recognized that it is the likelihood of presence with its consequent possibility of harm, and not technical status alone, which underlies a possessor's duty of care to the entrant. Moss v. Nooter Corp., Mo.App., 344 S.W.2d 647, 652 [6]; Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S.W.2d 797; Harper & James, The Law of Torts, Vol. 2, Sec. 27.-8, p. 1471; 38 Am.Jur., Negligence, 1970 Supp., p. 77 (addition to p. 676, note 9). For even "a trespasser is not denied the right to recover because a trespass is a wrongful act, but because, since his presence is not to be anticipated, the property owner owes him no duty to take precautions for his safety". McVicar v. W. R. Arthur & Co., 312 S.W.2d l.c. 812; Everett v. St. Louis & S. F. R. Co., 214 Mo. 54, 112 S.W. 486; and Arbogast v. Terminal Railroad Assn. of St. Louis, Mo., 452 S. W.2d 81 (which applies Sec. 339, 2 Restatement of the Law, Torts, First (1934) dealing with a possessor's duty to youthful trespassers whose presence should be anticipated). And once presence becomes known, whether that of an invitee, licensee, or trespasser, the significance of status largely disappears, and a uniform duty—that of reasonable care—is owed to each as to activities conducted on the premises. Anderson v. Welty, 334 S.W.2d l.c. 136, 137 [6]; Robidoux v. Busch, Mo.App., 400 S.W.2d 631, 636 [4, 5]; McVicar v. W. R. Arthur & Co., 312 S.W.2d l.c. 812; Day v. Mayberry, Mo.App., 421 S.W.2d 34, 40 [10, 12].

Defendant Hayes contends that at the time and place of injury, the minor plaintiff was a "mere licensee" because he had gone beyond the bounds of his invitation. Therefore, he suggests, plaintiff took the premises as he found them and "the only duty owed to a licensee is not to actively cause him injury".[1] Cognately, he argues, since he owed no duty of ordinary care to the minor plaintiff, the res ipsa loquitur submissions of the plaintiffs—allowing the jury to infer the existence and breach of such a duty—were improper.

This argument presupposes plaintiffs seek recovery for injury caused by a *condition* on defendant's land—that is, because of defendant's passive negligence. On the contrary, plaintiffs' pleadings, evidence and submissions were all calculated to charge, prove and convict defendant of active negligence. "Active or affirmative negligence has been defined as negligence occurring in connection with activities conducted on the premises * * * whereas, passive negligence is negligence that causes danger by

---

1. We are not called upon to answer this aspect of defendant's argument because we have concluded that plaintiffs pleaded, tended to prove and submitted a cause of action for defendant's active negligence. It should be noted, however, that defendant's argument is not otherwise sound. Wells v. Goforth, Mo., 443 S.W. 2d 155 (banc, 1969), adopted Sec. 342 of 2 Restatement, Law of Torts, First (1934) to this extent: alternative duties imposed upon a possessor by that decision is to warn a licensee of known conditions on the land which involve an unreasonable risk of harm to the licensee or to make the condition reasonably safe.

reason of the physical condition of the premises." Cupp v. Montgomery, Mo.App., 408 S.W.2d 353, l.c. 356 [2].

 In this case, defendant's negligence was of the operational or active kind. There is no evidence which suggests that the minor plaintiff was imperiled by any condition of the premises. He was injured, as no one doubts, when the raised car fell on him. The hoisting of cars, we know, is a normal activity of salvage operations. As defendant's brief with laconic directness expresses it: "A salvage yard is just what its name implies. The salvage business necessarily requires the raising of old vehicles to remove parts * * *". Nor does any evidence contradict that Gary, defendant's employee and agent, was aware of plaintiff's presence in the immediate area of the salvage operation. They had engaged in uninterrupted conversation from the moment they left the office in each other's company until the casualty occurred. The evidence justified the submission of defendant's active negligence, and because it did, we need not labor discussion to settle plaintiff's technical status. For whether as invitee or licensee, defendant owed him the duty to refrain from inflicting injury by his affirmative act of negligence. Robidoux v. Busch, 400 S.W.2d l.c. 636 [3]; Twine v. Norris Grain Co., Mo. App., 226 S.W.2d 415, 422 [7]. And, as we have already intimated, "it is now generally held that in cases involving injury resulting from active conduct, as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor". Harper and James, The Law of Torts, Vol. 2, Sec. 27.10, p. 1476; Prosser, Law of Torts, 2d Ed., Sec. 77, p. 448.

 Even so, no actionable duty is established against a possessor in such cases in the absence of evidence that the dangerous condition, although known to the possessor-defendant, was unknown to the plaintiff. There is no liability for an injury from a danger which was obvious or as well known to the entrant as to the possessor. Cupp v. Montgomery, 408 S.W.2d l.c. 360. In this case, plaintiffs submitted their causes of action under instructions of res ipsa loquitur. That doctrine applies only when "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence". McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559 [1]. The doctrine permits inference of negligence to be drawn from the unusual occurrence itself and permits proof of negligence from circumstantial evidence when these essential elements, the conditions for its application, are otherwise present. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003 [7]. To be submissible, however, the inference must cover all the necessary elements of negligence (including, in this case, plaintiff's lack of knowledge of the dangerous condition) and must point to a breach of defendant's duty. Prosser, Law of Torts, 3rd Ed., p. 216; 65A C.J.S. Negligence § 220.4.

 Whether the doctrine is applicable in a given case is a question of law, for it is a judicial function to determine whether certain circumstances, as a matter of law, permit a certain inference. Parlow v. Dan Hamm Drayage Co., Mo., 391 S. W.2d 315, 323 [8–11]. In submitting the issue of defendant's negligence under instructions of res ipsa loquitur, therefore, the court implicitly determined as a matter of law that the essential elements of the doctrine, including defendant's superior knowledge (and from that, plaintiff's lack of knowledge of the danger)—were inferable from the evidence. We agree with the trial court's assessment of the evidence.

The evidence was undisputed that Gary (and through him, defendant) not only

controlled the instrumentalities of injury but alone controlled the manner in which they were used. And although it was also undisputed that Thomas had watched Gary at his work, there is nothing to suggest he was more than a passive spectator, or that he had either the knowledge or experience to have detected any flaw (and thus a source of potential danger to be avoided) in Gary's performance. On the other hand, Gary had not only worked in the salvage yard for more than two years, but had safely performed the same operation with the same wrecker on previous occasions. From defendant's control of the instrumentalities, coupled with Gary's experience and consequent opportunity to know, and Thomas' lack of it, the element of defendant's superior knowledge of the cause of the occurrence and of the danger that inhered in it was supplied. Epps v. Ragsdale, Mo.App., 429 S.W.2d 798, 800 [1, 2].

█ Defendant directs the force of his argument against the remaining, and basic, element of the doctrine. He questions that the fall of the car and plaintiff's consequent injury were such an unusual occurrence under the circumstances as to give rise to an inference of negligence. This, too, is a question of law, and the legitimacy of the trial court's inference of negligence is to be determined by whether, more probably than not, an injury under the circumstances in evidence does not result unless accompanied by some form of negligence. Epps v. Ragsdale, l.c. 800 [3, 4]; Copher v. Barbee, Mo.App., 361 S.W.2d 137, 146 [14, 15]. The application of the doctrine in this primary sense, therefore, rests on common experience, and " ' "not at all on the circumstances of the particular case tending of their own force to show that the very accident in question was in fact the result of negligence" ' ". Thus, the doctrine rests " 'upon the generic circumstances peculiar to the class of physical causes which produced the casualty in question' ". Kapros v. Pierce Oil Corporation, 324 Mo. 992, 25 S.W.2d 777, 781 [2].

Ever since that celebrated barrel of flour rolled out of a warehouse window and fell upon a passing pedestrian,[2] courts have frequently found inference of negligence, and applied the doctrine of res ipsa loquitur, when injury has resulted from falling objects. Within this vest category of physical cause, an almost infinite variety of cases have been decided, each upon its own circumstances. See, among others, Layton v. Palmer, Mo., 309 S.W.2d 561, 66 A.L.R.2d 1242; Littlefield v. Laughlin, Mo., 327 S.W.2d 863; Pollard v. J. J. Newberry Co., Mo.App., 228 S.W.2d 398. Since the postulate of the doctrine rests on common experience, that "(w)hat has happened in the past under the same conditions, will probably happen in the future" (28 Am. Jur., Negligence, Sec. 296, p. 992), it is one of "evidentiary probabilities". Copher v. Barbee, 361 S.W.2d l. c. 146 [14, 15]; Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 98. Defendant argues more or less abstractly, however, (citing Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 40 S.W.2d 702, 705, as he does) that since "two or more inferences may be equally well drawn from them, one of which points to (his) negligence * * * as to the cause of plaintiff's injury, and the others to causes for which (he) was in no way responsible, proof of such facts does not make out a prima facie case for plaintiff". In Grindstaff, a chain supporting a truss broke and an employee was injured. It was held no submissible case was made under res ipsa loquitur because an inference that the unusual occurrence was due to a cause (as, for instance, a non-discoverable latent defect in the chain) other than the negligence of defendant could as reasonably be drawn. The court concluded (l. c. 705): "To make out a case for the application of the doctrine of res ipsa loquitur, the facts relied on must be such as to reasonably exclude any other hypothesis than that of the negligence claimed". That language and resultant holding, however appropriate under the facts presented, have been criticized

2. Byrne v. Boadle, 1863, 2 H & C 722, 159 Eng.Rep. 299.

as unduly restrictive of the application of the doctrine, and in this case can be no authority for defendant Hayes' position. Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 81; Layton v. Palmer, 309 S.W.2d l. c. 565; Littlefield v. Laughlin, 327 S.W.2d l. c. 866. Where the occurrence resulting in injury is such as to raise a reasonable inference of negligence under res ipsa loquitur, the plaintiff need not go further and exclude every other reasonable theory of nonliability on the part of the defendant. Adam Hat Stores, Inc. v. Kansas City, Mo., 316 S.W.2d 594, 600 [7]; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, 113 [5, 7]. To require such proof would be to undermine the doctrine. Cruce v. Gulf, Mobile & Ohio R. Co., 216 S.W.2d l. c. 81.

As it turns out, defendant's argument is entirely hypothetical. The occurrence and injury raise neither probabilities nor inferences in equipoise; rather, they speak clearly of defendant's negligence. In common experience, a car secured by cable and hook to the hoisting apparatus of a wrecker, then raised above the ground and held in position for removal of salvage, does not fall in the absence of negligence. And because these instrumentalities were in the exclusive control and management of defendant, it became sufficiently probable that the negligence was that of defendant as to permit a jury to make that finding. This probability was made more compelling by evidence (defendant's own) that: (1) in the course of the occurrence resulting in plaintiff's injury, the car and cable had come "unhooked", and (2) Gary, whom defendant had put in exclusive control and management of the instrumentalities of injury, had not only used them safely on numerous previous occasions, but also when he extricated plaintiff immediately after the car's fall. Nor do we agree with defendant's apparent contention that any in-

ference of his negligence was defeated, as a matter of law, by Gary's testimony that he could not explain why the car fell. "'(A) substantial factual inference of defendant's negligence * * * amounts to evidence as distinguished from a mere procedural presumption, (and) does not disappear upon the submission of evidence tending to exculpate defendant, but remains in the case as evidence sufficient to support an affirmative finding for plaintiff'". Adam Hat Stores, Inc. v. Kansas City, 316 S.W.2d l. c. 598 [3–5]. The uncontradicted evidence establishes a duty of ordinary care owed plaintiffs and breached by defendant, properly provable under res ipsa loquitur.

■ Defendant next urges that the trial court should have entered judgment in accordance with his motion for directed verdict because, as a matter of law, the minor plaintiff was both contributorily negligent and had assumed the risk of injury by having voluntarily exposed himself to the known and appreciated danger that a car suspended, in the manner of the 1959 Ford, might fall. Neither point was raised in defendant's motion for directed verdict or in his motion for new trial, and therefore is not preserved for our review. Civil Rule 72.02, V.A.M.R.

After the jury returned verdicts for plaintiffs under instructions of res ipsa loquitur, defendant moved, and the court ordered, the grant of a new trial because plaintiffs had failed to define "negligence" as used in their verdict-directors, Instructions 3 and 4 and, also, because they failed to instruct on measure of damages by MAI 4.01.

Instructions 3 and 4, identical except as to the plaintiff(s) on whose behalf given and the wording of proposition Fourth, submitted:[3]

"Your verdict must be for the plaintiff(s) Thomas Michael Cunningham

---

3. These instructions, modifications of MAI 31.02(1)—Verdict Directing—Res Ipsa Loquitur, comply with the "all muscle and no fat" and other standards required

of modifications by Civil Rule 70.01(e); Epps v. Ragsdale, 429 S.W.2d l. c. 801 [8, 9].

(Woodrow Cunnningham and Charlotte Cunningham) if you believe:

"First, the defendant by his agent and employee had the exclusive management and control of the 1959 Ford automobile and wrecker mentioned in the evidence, and

"Second, the 1959 Ford automobile fell upon the plaintiff Thomas Michael Cunningham, and

"Third, such falling of the 1959 Ford automobile was the direct result of Defendant's negligence, and

"Fourth, as a direct result of such negligence, plaintiff (plaintiff's child) Thomas Michael Cunningham (was injured and plaintiffs thereby) sustained damage.

"Unless you believe plaintiff(s) is (are) not entitled to recover by reason of Instruction No. 6." [4]

Defendant Hayes (who, as to this aspect of the court's judgment, is respondent) asks us to sustain the trial court because the meaning of "negligence" is not commonly understood when used as a term connoting legal fault, and therefore must be defined. In recognition of this (he continues in argument), Chapter 11.00 of MAI defines "negligence" in its full range of possible applications and having done so, implicitly requires that when that term is used in a verdict directing instruction, it must be appropriately defined. In support, he cites Helfrick v. Taylor, Mo., 440 S.W. 2d 940 and Brewer v. Swift & Company, Mo., 451 S.W.2d 131.

In Helfrick, a case involving the exercise of ordinary care, the court approved the use of MAI 11.02 and 11.05 to define "negligence" as that term appeared in de-

fendant's contributory negligence instruction. Having ruled the merits, the court went on to declare, 440 S.W.2d 1. c. 945 [5]: "As a matter of fact, Instruction No. 3 (the definition) was necessary to tell the jury what the term 'negligence' as used in Instruction No. 8 (the contributory negligence verdict-director) meant. Its use was mandatory." The court then made reference to MAI 11.02 and also the illustrations on use of instructions in MAI 31.01, 31.02, 31.03 and 31.04 (now MAI 35.01 and following), all of which include an instruction defining "negligence". (We here note that none of the illustrations, MAI 31.01 et seq. or MAI 35.01 et seq. involves a res ipsa loquitur submission.) This holding, however, was referred to as "dictum" by the Supreme Court en banc in Brewer v. Swift and Company, 451 S.W.2d 1. c. 134. In Brewer, a case transferred to banc from the St. Louis Court of Appeals, one of the questions presented was whether MAI requires that "negligence", there used in defendant's contributory negligence instruction, be defined. As to that, the Court of Appeals had ruled, 1. c. 133 [2]: "It does not appear that the instructions for use of MAI specifically require the use of a definition instruction for negligence * * * Although we do not hold that in every case the giving of a negligence definition is required by MAI, it would appear to be the better practice to include such definition where the term 'negligence' appears in any of the instructions." The Supreme Court en banc, adopted the opinion of the Court of Appeals in every other respect, but expressed this reservation, 1. c. 134: "We do not unqualifiedly adopt that part of the foregoing opinion dealing with the issue of the failure to define negligence. See statement of dictum in Helfrick v. Taylor, Mo.Sup., 440 S.W.2d 940 [5]."

Whether MAI requires "negligence" be defined in every instance of its use, therefore, has yet to be authoritatively settled.

---

4. Instruction No. 6 is an amalgam of propositions couched in the language of assumption of the risk but submitting plaintiff's contributory negligence. The legal sufficiency, propriety or necessity of that instruction under MAI are not in issue.

Our own inquiry is confined to the issue presented, whether "negligence" must be defined when res ipsa loquitur is submitted under MAI.

■ Plaintiffs' (here, appellants) essential argument is that because of the nature of the res ipsa loquitur doctrine itself, no definition of "negligence" is required when it is submitted. We do not agree. Res ipsa loquitur facilitates, but does not dispense with, proof of negligence. Frazier v. Ford Motor Co., 276 S. W.2d l. c. 98 [3]. It does not permit imposition of liability without fault. So whether liability is to be found from specific conduct or from circumstances under the doctrine, the ultimate inquiry is still the defendant's negligence. Stemme v. Siedhoff, Mo., 427 S.W.2d 461, 465 [4]; 65A C.J.S. Negligence § 220.4, p. 528. And the question is not, as the parties contend, *inter sese*, whether "negligence" is a word of common understanding, but whether as used in a given instruction, it can be reasonably understood by a jury without the need of further definition. State ex rel. Greer v. Cox, Mo., 274 S.W. 373, 376 [6–8]. See also, MAI, 2d ed., General Approach, p. XXIII. Unlike those submissions which require findings of specific conduct equivalent to negligence so that its definition becomes superfluous (Hinzeman v. Missouri Pacific Railroad, 182 Mo. 611, 81 S.W. 1134, 1138; State ex rel. Greer v. Cox, 274 S.W. l. c. 376 [6]), plaintiffs' MAI res ipsa loquitur submission, which permits an inference of negligence from the factors of control and the occurrence itself, is not a definition of negligence but a statement of its probability, and cannot be reasonably understood by a jury in the absence of definition in terms of the applicable standard of care.

The inference raised by the doctrine is that there was a want of ordinary care.[5] In submitting plaintiffs' cause of action under the doctrine, therefore, the trial court had not only inferred some negligence from the circumstances as a matter of law, but also that, more probably than not, it was defendant who had failed to exercise (in this case) ordinary care. Since a factor bearing on the quantum of proof necessary to establish the probability of defendant's negligence under the doctrine is the duty owed plaintiff by defendant (Shafer v. Southwestern Bell Tel. Co., 295 S.W.2d l. c. 111 [1–3]), the court necessarily had defined for itself the nature of that duty before having submitted its breach.

■ But although the court is bound by the inference of negligence it has drawn from the circumstances, the jury is not. " '(I)t is evidence to be weighed, not necessarily to be accepted as sufficient.' " (Harke v. Haase, 75 S.W.2d l. c. 1004 [7]; Turner v. M. K. T. R. Co., 346 Mo. 28, 142 S.W.2d 455, 460 [9, 10]) even when, as here, defendant offers no explanation for the injury. In this, the probability of defendant's negligence is determined by the jury for themselves, and because the duty owed by defendant is a factor bearing on that determination, it is necessary that what the court had defined for itself in its own determination of defendant's negligence be defined for the jury to whom it has passed on that duty. Particularly is it so because the doctrine has application as well under circumstances requiring more (but not less) than ordinary care—for instance, the highest degree of care. 65A C.J.S. Negligence § 220.9a. See, also: MAI 31.02(1) and MAI 31.02(2). In such cases, because of the greater care required, " 'the inference of negligence becomes all the easier to draw' ", and thus the greater its probability. Harper and James, Law of Torts, Sec. 19.6, p. 1084.

To submit MAI res ipsa loquitur negligence, a finding of probability, without defining the equivalent standard of care, an ingredient of that probability, is substan-

5. Prosser, Law of Torts, 3rd Ed., p. 230; 65A C.J.S. Negligence § 220.9a; Anno.,

23 A.L.R.3d, Sec. 2, p. 1085, Harper & James, Law of Torts, Sec. 19.6.

tively insufficient as depriving the jury of a necessary basis for their finding. Since the inference of negligence raised by the circumstances of this case was defendant's failure to exercise ordinary care, the applicable definition of "negligence" was MAI 11.02(I). Its use was mandatory and it was reversible error not to have given it.

The trial court's order granting defendant a new trial must be sustained. We need not determine whether it was also error for plaintiffs to have failed to submit their damages by MAI 4.01 or any other formal instruction. Admittedly, this lapse was an inadvertence, and, in any event, is not likely to recur.

The judgment is affirmed and the cause remanded.

All concur.