755 F.Supp. 260 (1991)
Mark C. HOLST, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 88-231 C (5).
United States District Court, E.D. Missouri, E.D.
January 10, 1991.
*261 Sindel & Sindel, Charles D. Sindel, Clayton, Mo., for plaintiff.
Henry J. Fredricks and James Thurman, Asst. U.S. Attys., St. Louis, Mo., for U.S.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff initiated this action against the United States of America after he was hit by a mail-carrying device pushed by a Postal Service employee. Plaintiff has filed a complaint against the United States pursuant to the Federal Tort Claims Act. The case was tried before this Court sitting without a jury on June 11 and 12, 1990. This Court, having now considered the pleadings, the testimony of the witnesses, the deposition testimony, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
Plaintiff is a resident of St. Charles County, Missouri. At the time of trial, plaintiff and his wife, Lenora Holst, had been employees of the St. Louis County Bulk Mail Center for fourteen years. The Bulk Mail Center is owned and operated by the United States Postal Service, an agency of the defendant. On Thursday June 26, 1986, at about 2 p.m., they went into the Bulk Mail Center to pick up their paychecks. They were paid on every other Friday and postal policy allowed employees on their day off to pick up their paychecks beginning Thursdays at 2:00 p.m. The Holsts had done so routinely for two years.
Upon arriving at the Bulk Mail Center, the Holsts entered the main entrance. At this entrance there are three sets of doors before entering the work area. The first set is unlocked and the other two are electronically controlled. Plaintiff and his wife walked through all three doors, then onto the work area. They looked straight ahead and did not turn to first look into the work aisle before stepping into it. As they took about five steps toward the work aisle, plaintiff was struck by an over-the-road mail container ("OTR") pushed by postal service employee David Gale.
The OTR is a large wheeled container used to transport bulk packages within the *262 Bulk Mail Center. It is about six feet high, three feet wide, and five feet long. It weighs between 350 and 450 pounds empty and as much as 1,800 pounds fully loaded. The OTR Gale was pushing was loaded above normal capacity by bulk and obscured Gale's vision through holes that surround the top of the OTR.
Curtis Days was supervisor of mails at the Bulk Center. He supervised Gale at the time of the accident. Gale started working at the Bulk Center on June 16, 1986  ten days after his graduation from high school and ten days before this incident. Gale has a learning disability and was employed by the post office in a special program for persons with disabilities. He was twenty-three years old and still employed by the post office at the time of trial.
Days directed Thomas Heidotten to train Gale and give him instructions about how to do his job. Gale was instructed as to the proper method of operation of the OTR. The instructions are to walk along the side of the OTR pulling it so the operator can guide it and manipulate it and still see ahead. The OTRs are sometimes used with a tow-line, which pulls the OTR along a specific route and does not require manual guidance. At the time of the accident there was no tow-line to get the OTR to its destination so Gale elected to pull it. Apparently, it could have been used with a tow-line, but it would have been by a circuitous route and would have taken longer.
Gale weighs 120 pounds and is 5 foot 9 inches tall. Because of the weight of the OTR he was unable to get the OTR moving by pulling it. He pushed the OTR to get it moving, then was able to push it at his normal walking gait.[1] As Gale was moving the OTR, he felt it hit something. He pulled back on it and it moved one to two feet before stopping. He did not see the plaintiff before impact.
An I-beam near the door also obstructed plaintiff's good visibility of the work area. Plaintiff and his wife did not see the OTR before it struck the plaintiff. Although both had worked for the Bulk Center for more than twelve years and had moved OTRs themselves, plaintiff had never seen an OTR in that aisle before and his wife had seen them there rarely.
When the OTR collided with the plaintiff, it pushed him against his wife but neither fell. The OTR struck plaintiff on his left shoulder and left hand. Plaintiff reported the injury to Gale's supervisor, Days, and to plaintiff's supervisor, Frances Jones Echeazu. Echeazu and plaintiff then walked back to look at the OTR. Plaintiff later went to the plant nurse and exhibited that his left shoulder was reddened and his left hand was scraped on the back side. Meanwhile, plaintiff's wife picked up the paychecks and met the plaintiff at the nurse's office. The nurse bandaged plaintiff's hand.
The next day plaintiff went to the plant doctor, Dr. Laurence J. Billy, who took X-rays of plaintiff's left hand and bandaged it.[2] Dr. Billy put Holst on light duty and continued to treat him for about one month. During this time, plaintiff did not miss any days of work. The pain in plaintiff's shoulder subsided after one week. He took Tylenol, a painkiller, for the pain and discomfort that continued in his hand and continued to receive physical therapy.
Plaintiff then saw Dr. Thomas Doerr on August 7, 1986. Dr. Doerr noticed swelling and decreased strength in Holst's left hand. Dr. Doerr referred plaintiff to Dr. Thomas J. Fox, an orthopedic surgeon. Dr. Fox first saw plaintiff on August 14, 1986 and treated plaintiff for two months, continuing the light duty and physical therapy.
Plaintiff was referred for surgery to Dr. James H. Scheu. About 30 percent of Dr. Scheu's practice was devoted to hand surgery. On February 25, 1987, Dr. Scheu *263 performed a capsulotomy and tendolysis on plaintiff to surgically release some tight capsule elements around the joints of the index and long fingers of the left hand. After the surgery, Dr. Scheu prescribed medication for pain.
On March 3, 1987, six days after the surgery, Dr. Scheu made a diagnosis of "baseline" reflex sympathetic dystrophy (RSD) based on his belief that plaintiff still had a fair amount of discomfort, and that his fingers looked tight and shiny. Dr. Scheu referred plaintiff to Chuck McDonnell, a physical therapist. McDonnell fitted plaintiff with a dynamic splint on March 6, 1987. Holst wore the splint each day for more than a month, then at night for several months.
Plaintiff still experienced discomfort and continued the pain medication. Plaintiff underwent physical therapy, which included massages, whirlpool baths, paraffin baths and various exercises. He continued to work light duty.
In August 1987, plaintiff was prescribed a Jobst glove, which is a tight-fitting glove designed to compress the hand and reduce swelling. At first he wore the glove to work, but by October 1987 began wearing the glove during all his waking hours. Each glove lasts about two months, then must be replaced at the cost of $80. Plaintiff also began to take anti-inflammatory medication at that time.
In February 1988, plaintiff was losing flexibility in the index finger of his left hand. The next treatment was with a transcutaneous electrical nerve stimulation (TENS) unit. The TENS unit is a device that stimulates the nerves in an area of chronic pain in an effort to block the painful impulses. Plaintiff used the unit for three months, and it did limit the pain but the stiffness and swelling did not improve. Since July 1988, plaintiff's condition has remained essentially unchanged.
The principal injury is to plaintiff's left minor hand. Plaintiff can barely bend his index and middle fingers. He cannot grip with those fingers and they are basically unusable. However, plaintiff compensates for this damage by gripping with the thumb and the other two fingers. He handles packages and works at his job quite ably. Plaintiff states that he continues to have pain and that his two injured fingers with the limitation of movement create the problem. He feels that this is disabling in that he cannot play his guitar or grip certain items or do heavy lifting.
In addition to the surgery by Dr. Scheu, plaintiff later underwent a bone scan by Dr. Paul W. Weeks. Dr. Weeks, a professor of surgery at Washington University in St. Louis, testified on behalf of the government. He is a plastic surgeon, with his practice limited to the hand and arm. He has a national and international reputation as an expert in his field. Dr. Weeks uses the bone scan to make a diagnosis regarding RSD. He concluded that plaintiff had Secretan's disease, not RSD.
Dr. Scheu's diagnosis on March 24, 1989, was that plaintiff had a form of RSD, based on his finding of chronic swelling, pain, stiffness and discoloration. He believes that future medical treatment would consist of therapy and the use of a compression glove. It is his opinion that plaintiff's condition will not worsen but much improvement is not anticipated.
The medical testimony indicates that with RSD there is usually excessive sweating and swelling in the hand and burning pain. If it persists, the patient loses the function of the hand. Secretan's Disease is a swelling over the back of the hand that is associated with trauma in which the patient develops significant pain, swelling and it can lead to stiffness. Secretan's can be, but is not always, self induced.[3] The basic difference between Secretan's and RSD is that Secretan's involves strictly the back of the hand and the fingers whereas with RSD, tremendous emotional overlay can render the patient totally incapacitated. Plaintiff does not claim to suffer from this emotional overlay.
Dr. Scheu, plaintiff's doctor, testified that he believes that the difference between Secretan's Disease and RSD from a *264 disability standpoint is probably very little. He further stated that regardless of the label, RSD or Secretan's or simple injury, plaintiff has a continuing problem.
Regardless of whether the correct diagnosis is RSD, Secretan's or some other disability, plaintiff clearly suffered an injury. Dr. Weeks did not expect any improvement and considered plaintiff permanently disabled. In Dr. Weeks' opinion, plaintiff has 27 percent impairment of his left upper extremity at the wrist. This figure is based on 12 percent of loss of motion in his thumb, index and long fingers, and 15 percent loss of strength in his hand.
Plaintiff incurred $6,159.23 in medical expenses. He will continue to require checkups of $28.00 each month and expenses for medication of $3.00 each month and four Jobst gloves per year at $80.00 each. He has not missed any work, although he continues on light duty. As a light-duty employee, plaintiff is no longer eligible for overtime work.

CONCLUSIONS OF LAW
This Court has jurisdiction over this matter under 28 U.S.C. § 1346(b) and the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 2671 et seq. (1982). It is undisputed that David Gale was a civilian employee of the United States government, and that he was acting within the course of his employment at the time of the accident giving rise to plaintiff's claim.
Under the FTCA, this Court must follow the substantive law of the state where the accident occurred. Massachusetts Bonding and Ins. Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956). In this case, the accident occurred in St. Louis County Missouri; therefore this Court will apply the substantive law of Missouri.
Missouri law requires that to establish a case of actionable negligence, the plaintiff must demonstrate (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty through act or omission; and (3) plaintiff was thereby proximately injured. Allnutt v. United States, 498 F.Supp. 832, 838 n. 9 (W.D.Mo. 1980).
With regard to the conditions of land, the duty owed by a property owner is governed by the status of the entrant on the premises. Roberts v. Menorah Medical Center, 777 S.W.2d 330 (Mo.App.1989); Davis v. Jackson, 604 S.W.2d 610, 612 (Mo. App.1980). However, as to activities conducted on the premises, the possessor owes a duty of reasonable care to invitees, licensees and trespassers alike. Davis, 604 S.W.2d at 612; Cunningham v. Hayes, 463 S.W.2d 555, 559 (Mo.App.1971).
Plaintiff went onto defendant's premises on his day off to pick up his paycheck. He was not working, but rather was on the premises for his own convenience. He was not a trespasser, as he had access to the locked door and permission to enter for the purpose of getting his paycheck. He was not an invitee, as he was not there in connection with Postal Service business, or on business of mutual interests to himself and the Postal Service. He was on the premises as a licensee. Gillis v. Collins, 770 S.W.2d 503, 505 (Mo.App. 1989); Singleton v. Charlebois Constr. Co., 690 S.W.2d 845, 847 (Mo.App.1985); Wells v. Goforth, 443 S.W.2d 155, 159 (Mo. banc 1969).
Thus, as to the activity conducted on the premises, therefore, defendant owed plaintiff a duty of reasonable care. Davis, 604 S.W.2d at 612. Missouri law requires that ordinary care be determined in accordance both with known dangers and those which reasonably should have been anticipated under the circumstances. Allnutt, 498 F.Supp. at 842 (citations omitted).
David Gale, an employee of defendant acting within the scope of his employment, failed to use reasonable care when operating the OTR. He loaded the OTR beyond capacity, blocking his visibility through holes at the top of the cart. The OTR was loaded to 1,800 pounds. Instead of pulling the OTR so that he could maintain a lookout, Gale pushed it from behind. He moved this heavy cart through an area where people enter the building. He did *265 not see the plaintiff until after the OTR struck him.
A claim of negligence requires that the actions of the defendant be the proximate cause of the injury. Proximate cause is cause which may be reasonably regarded as a direct, producing or efficient cause, or as entering into and forming a part of the direct, producing or efficient cause of the injury. McConnell v. Pic-Walsh Freight Co., 432 S.W.2d 292, 297 (Mo.1968). Here, the carelessness of defendant's employee was the proximate cause of plaintiff's injury.
Plaintiff has established that defendant owed a duty to plaintiff to exercise reasonable care. Plaintiff has further established that defendant failed to exercise the ordinary degree of care when its employee, acting in the course of his employment, pushed an overloaded 1,800-pound cart without proper visibility. Finally, there is no doubt that the defendant's breach was the proximate cause of plaintiff's injuries. Thus, plaintiff has established a claim of negligence against defendant.
Missouri law applies the system of comparative negligence, apportioning damages between the parties who are at fault. Gustafson v. Benda, 661 S.W.2d 11 (Mo. banc 1983). Where there is evidence that the conduct of both parties combined or contributed to cause damage, the fact finder may compare the respective contributions toward such causation made by each party. Allison v. Sverdrup & Parcel & Assoc., Inc., 738 S.W.2d 440, 451 (Mo. App.1987). Missouri has adopted the "pure" form of comparative fault. Under the "pure" form, a plaintiff's negligence that concurs with that of the defendant does not relieve the defendant from liability. It merely diminishes the amount of damages that plaintiff can recover. Id. The "pure" comparative fault system seeks to compensate an injured plaintiff so long as his portion of the combined negligence of the parties is less than 100%.
Plaintiff has established that the negligence of defendant's employee caused his injury. However, plaintiff substantially contributed by failing to keep a proper lookout. He stepped into the work area at the Bulk Mail Center without first looking to see what might be approaching him.
The Court finds that plaintiff has suffered damages in the amount of $41,159.53 which includes $20,000.00 to compensate for his disability, $10,000.00 for pain and suffering, $6,159.53 for his medical bills and $5,000.00 for his future medical bills.
In conclusion, the Court finds that the defendant, through David Gale, was 50 percent at fault and that the plaintiff, by his failure to look, was 50 percent at fault. The Court further finds that plaintiff is entitled to damages in the amount of $20,579.77. Judgment will be entered accordingly.
NOTES
[1] The Court takes judicial notice that the normal rate of speed for a walking adult male is two to three miles per hour, or 2.9 to 4.4 feet per second. Zickefoose v. Thompson, 347 Mo. 579, 148 S.W.2d 784, 792 (1941).
[2] Holst believed that the injury was a federal workers compensation claim. His claim was rejected as not arising out of the course of his employment. This is not an issue in his litigation.
[3] There was no evidence that plaintiff's injury was self-induced.