**Alma HURST, Plaintiff-Appellant,**

**v.**

**CHASE HOTEL, INC., a Corporation, and York Garage Company, Defendants,**

**Chase Hotel, Inc., a Corporation, Defendant-Respondent.**

**No. 32179.**

St. Louis Court of Appeals.

Missouri.

Oct. 17, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 28, 1967.

Application to Transfer Denied Jan. 8, 1968.

Goldstein & Price, Gary T. Sacks, St. Louis, Bernard & Davidson, Granite City, Ill., for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Morris E. Stokes, F. Douglas O'Leary, St. Louis, for defendant-respondent.

BRADY, Commissioner.

Plaintiff brought suit to recover damages for personal injuries sustained in a fall in the parking garage of defendant, Chase Hotel, Inc. A motion to dismiss as to the defendant York Garage Company was sustained and no appeal being taken from that decision we will hereafter refer to the defendant Chase Hotel, Inc. as "defendant". The jury returned a verdict in plaintiff's favor in the amount of $9,000.00. The judgment entered thereon was set aside by the trial court which granted defendant's after-trial motion for

judgment in accordance with its motion for directed verdict on the ground plaintiff had failed to make a submissible case. It follows this court is to consider the evidence in the light most favorable to the plaintiff who is entitled to the benefit of all favorable inferences.

In her petition plaintiff alleged she was an invitee of the defendant at the time of the accident and that her fall resulted from defendant's negligence in that the decline from the landing to the floor of the parking ramp " * * * was constructed in such a sharp and substantial manner that persons using the entrance to enter the said Parking Ramp from the second floor of the Hotel would suddenly step onto the said decline, their balance being affected, particularly those persons who were females and wearing high heeled shoes."; that no warnings or signs were present; and that defendant failed to provide a handrail. Defendant's answer admitted ownership of the hotel and garage, denied the remaining allegations, and pleaded the contributory negligence of plaintiff.

The parking garage was operated in connection with defendant's hotel. Plaintiff, a 65-year-old lady, had never been in this garage before. She was driven by friends to the parking garage and entered the hotel to attend a function being held there. At the conclusion of this function the plaintiff's party, consisting of the Carters, the Kessmans, herself and her husband whom they had met at the function, decided to leave. In order to do so it was necessary to leave the hotel and go into the garage facility. This they did by Ramp 8, a different ramp than that by which they had entered. Mrs. Carter then discovered that she had left a gift behind and plaintiff's husband went back with her to find it. Plaintiff, the Kessmans, and Mr. Carter continued on their way. The doorway through which they left the hotel and entered the garage is approached from inside the hotel by the means of steps to a landing upon which the door is located. The concrete floor comprising this landing

is level both on the hotel and garage sides of the door. On the garage side of the door the level floor extends out into the garage an unspecified distance but one which is sufficient for those entering or leaving to stand upon. The garage floor itself is concrete and slopes upward to the level of the landing floor. The evidence refers to this slope as a "cove" area. This slope or cove extends for about two feet beyond the end of the landing and in that distance falls some six inches. The plaintiff's expert was asked the following hypothetical question based upon an assumption a person of the build of the plaintiff was " * * * standing with their back six inches from the door after it was closed on the level area, and assuming she would testify under oath she had good eyesight, normal eyesight, and assuming she would testify under oath that she had good lighting, there was nothing affected her ability to see, and assuming that she were to look down and not have any furs or other garment that would obstruct her vision, now, would you tell the jury whether she could see the line that separated the level part from the sloping area?" His answer was: "If she would make this inspection, as you describe it, I would think that it would be possible for her to see it. Q Assuming if she did everything—I want you to assume all the facts I hypothesized, if she looked down, it would be visible to anybody, would it not? A It would, but I don't know why she would look down." This witness's further testimony was that unless a person looked downward he would not be aware of the slope.

Plaintiff's party left the hotel in the following manner. The door opened outward into the garage. Mr. Carter testified that he stood at the door frame on the inside of the door and held it open with his arm. Mr. Kessman went through the door first and proceeded to go to his automobile. His wife came through next and then the plaintiff. After they got through he testified he came through the door and it closed itself. The plaintiff had a slightly

different version of the parties going through the door. Her testimony is that Mr. Kessman went first and went on to get the car. Mr. Carter opened the door but "* * * he took Mrs. Kessman right straight out, and I just barely stepped out of the door, slightly to the right and stood there." In any event, it is clear that under either Mr. Carter's or the plaintiff's version the door was open while those preceding her left and that the plaintiff stood for some moments on the landing on the garage side of the door. What happened next is perhaps best explained in the language of plaintiff's testimony: "Q Now, as you stood there, Ma'am, where were you looking? A I was looking right over the automobile where they, Mrs. Kessman and Mr. Carter was. Q And what did you see as you looked over there? A Well, I just saw that Mrs. Carter—or Mrs. Kessman wasn't feeling too good. Q Now, would you give the court and jury and (sic) idea of how long of—well, what happened next? A Well, I stood there very close to the wall, just watching them, the car parked real, up close there, and the automobile which Mr. Kessman got came down right past over where I was looking. Q And then what happened? A I just slightly turned to the left and took one step to go to the automobile and just stepped into space. Q And then what happened? A Well, I fell."

Plaintiff was asked whether she was "* * * complaining the lighting had anything to do with your accident * * *." Her answer was that she was not. The testimony of other witnesses indicated the lighting was such that one could see things clearly. Plaintiff further testified that there was nothing in the area that in any way affected her ability to see and that after she went through the door out onto the landing she did not look downward again but kept looking out toward the automobile where her friends were.

In Ecker v. Big Bend Bank, Mo.App., 407 S.W.2d 45, l.c. [2–4], this court set out the basic rule applicable to situations of the nature here involved. Therein we said: "The judicial reports of this State make abundantly clear our approval of the principle formulated in Restatement, Second, Torts, § 343, p. 215, imposing liability, under certain conditions, upon an invitor for bodily harm to invitee caused by a natural or artificial condition on the former's premises. See Mo.Digest, Negligence, The Restatement reads as follows: 'A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it,* and (c) fails to exercise reasonable care to protect them against the danger. * * · *' (Emphasis supplied.) It is equally well settled that the basis for imposing liability is the invitor's superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. It follows that where the danger is or should be as well known to the invitee as to the invitor, the latter has no duty to warn of such danger and incurs no liability for injury to the invitee resulting from the danger. Gruetzemacher v. Billings, Mo., 348 S.W.2d 952, l.c. 957." The basis for that part of the above quotation following the recitation of the Restatement is to be found in § 343A. of the Restatement which reads as follows: "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

"While a business invitee cannot fasten liability upon the proprietor of a store by failing or neglecting to see that which is perfectly obvious to a person in possession of his faculties, there is no exact test or

formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must turn upon its own facts and circumstances. Summa v. Morgan Real Estate Co., supra, 165 S.W.2d 390, 393." Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623, l.c. 630. The facts and circumstances shown in the instant appeal conclusively demonstrate that plaintiff stood for a few moments upon the landing on the garage side of the door and thus had an opportunity to see the slope; at that time or immediately before as she was coming out of the door she had an opportunity to view her companions as they walked through this area; and these premises were well lighted and there was nothing to prevent the plaintiff from seeing this condition. Her action in looking outward toward the automobile where her companions had congregated renders this case analogous to Cates v. Evans, Mo.App., 142 S.W.2d 654, l.c. [3, 4]. In Cates the plaintiff was looking at a show window in another business establishment and failed to negotiate a stepdown. As in the instant appeal there was no complaint about the lighting. It was there held (Cates v. Evans, supra, l.c. 657): " * * * The evidence wholly fails to establish negligence on the part of defendants. The only reasonable conclusion that we can arrive at is that plaintiff fell, while gazing into the show window and paying no attention to how or where she stepped as she made her exit from defendants' store. To hold defendants liable under the facts in this case would make them liable as insurers and not because of negligence. (Cited cases.)" Another case particularly in point is Boyd v. Logan Jones Dry Goods Company, 340 Mo. 1100, 104 S.W.2d 348, which involved a diagonal step alleged to have been dangerously constructed. The court rejected that contention and pointed out that the step was wide enough for a secure foothold; that it was well lighted; and that others exercising ordinary care could walk over it safely. Under these conditions the court in Boyd held that there was not sufficient evidence of negligent construction to go to the jury.

We hold the trial court correctly ruled defendant's after-trial motion for judgment in accordance with its motion for directed verdict. That decision renders superfluous any consideration of the other allegations of prejudicial error. The judgment is affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.