Genevieve McCLURE, Plaintiff-Appellant,

v.

Joseph KOCH, d/b/a Koch's Market, Defendant-Respondent.

No. 33018.

St. Louis Court of Appeals.

Missouri.

Oct. 15, 1968.

Donald S. Hilleary, Clayton, for plaintiff-appellant.

Robert J. Hellrung, Gerald D. Morris, St. Louis, for defendant-respondent.

RUDDY, Judge.

Plaintiff, Genevieve McClure, brought this action to recover damages for personal injuries sustained by her when she fell on a ramp leading to a sidewalk in front of a store owned and operated by

defendant. Plaintiff appeals from a judgment entered pursuant to a jury verdict for the defendant. Plaintiff complains about an instruction given on behalf of the defendant; about the exclusion of certain evidence and about a statement made by counsel for defendant in the course of his final argument to the jury. We need to discuss only one of the complaints of plaintiff because we find it necessary to sustain the contention of defendant that plaintiff failed to make a submissible case against him.

On the date of plaintiff's fall and for twelve years prior thereto, defendant was in control and possession of premises known as 11781 Manchester Road in Des Peres, Missouri. On the premises was a building housing a grocery and meat market owned and operated by the defendant. Within the premises and virtually surrounding the store was a parking lot. The only entrance to the store was a double door on the south side of the building. In front of the south side of the store building is a sidewalk which appears from the photographs in evidence to be approximately five feet in width. On each end of this sidewalk there is a ramp that slopes down from the sidewalk to the parking lot. The only ramp we are concerned with in this case is the one on the west end of the sidewalk which leads to the parking lot. The evidence shows that after you get off the ramp the parking lot continues to slope slightly downward. The parking lot slope, according to plaintiff's witness—a consulting engineer—is less than the ramp slope. Defendant has owned and operated this store for twelve years and estimates that approximately 300 people come in and out of his store each day and that approximately one-fourth of these people use the west ramp. The ramp in question was there when defendant took over the store and in the time that defendant owned and operated the store he did no work of any kind on this ramp. In order to reach the parking lot on the south side of the walk one must step down approximately four to six inches to the parking lot, except in the approximate center of said walk, in front of the entrance door, where there is a ramp from the sidewalk to the parking lot. The west ramp is made of a "hot mix" or, as described by the consulting engineer, an asphaltic concrete paving which he said under certain conditions may be considered a non-slip material and in certain other conditions it may not be non-slip. The witness did not explain under what conditions the asphaltic concrete paving may not be a non-slip material. In the time the store has been owned and operated by the defendant there has been no change in the structure or surface of this asphalt ramp. The consulting engineer said the ramp was four feet in width and about two feet in length. He said the slope dropped one inch for each three inches of horizontal slope. This witness testified that there was a custom and practice, "in the industry," in the construction of this type of ramp, that the slope should not exceed one inch drop for each ten inches of horizontal run. This witness further testified that it was the custom in the community to provide inserts of carborundum crystals in the ramp, which would provide "* * * a higher coefficient of friction, so that when your foot strikes against them, they don't slide across."

Plaintiff had been shopping at defendant's store ever since she moved into the neighborhood of the store. She has lived in the neighborhood and has shopped at the store for two or three years and she had begun to shop at the store more frequently in the several months prior to her fall. She thought she shopped in the store in that period more than once a week. When attending the store she would park her automobile in the parking lot and would usually use the west ramp to and from the store. While there are other ramps, the west ramp was the one she used the most. She has gone up and down that ramp many times in the period she has been a customer of the store. All of this time the ramp in question has been in the same condition. She testified that she had no trouble before the date of her fall in ascending or descending the ramp and that

she experienced no slipping or anything like that on this ramp prior to the date of her fall. She found her travels to and from the store easier when she used this ramp. On the date of her fall she was wearing the same shoes she wore on prior occasions.

On May 13, 1964 plaintiff drove her automobile to the parking lot on the premises of the defendant between 4:00 and 5:00 P.M. The sky was overcast, but it was not raining. Plaintiff parked her automobile at a slight angle approximately one yard north of the ramp on which she fell. After she parked her car she walked up the west ramp and had no trouble at that time. She entered the store and was there a short time, during which she made a few purchases that she placed in a small package or bag. She then left the store with her package and a purse which she thought she carried over her arm. Upon leaving the store she turned to her right on the sidewalk and proceeded to the area of the west ramp. Plaintiff was asked whether or not she ever looked at the ramp as she approached it that day going toward her car; she answered, "Not the ramp, no. I was looking—Q. Toward your car? A. I wouldn't look down, no." Again when asked if she looked down at the ramp before she fell and as she was approaching it, she answered, "I had to, I guess, but I wasn't aware of it. Q. Were you aware of whether there was any kind of foreign material, moisture or water, anything like that on the ramp? A. I didn't look." Again when asked if she had any knowledge of whether or not there was any kind of foreign material or anything at all wrong with the ramp, she answered, "No. I don't know really." She said she saw nothing unusual regarding the ramp. She did not look at the ramp after she fell to see if there was anything foreign on the ramp. Parts of plaintiff's deposition were read in evidence by defendant. In these parts she testified as follows: " * * * 'All right, now, as you approached this ramp that you have described, did you see any foreign materials or any moisture or anything unusual on the ramp? A. I wasn't looking. I couldn't tell you. Q. Did you at any time see anything unusual on that ramp? A. I was just approaching my car.' "

Plaintiff said she stepped on the ramp with her right foot. In explaining what happened thereafter, she said, "To my best recollection, it slipped and turned, and I fell on it. Q. Do you know how your ankle turned? Can you tell us? A. No, Mr. Hilleary, I do not." After she fell a portion of her body was on the ramp. In her cross examination she said that she believed she first stepped on the ramp with her right foot " * * * because that is what I fell on. Q. Was the other one on there? A. I don't know. The ramp is not very large. I'm sure it must have been though—no, I'm not sure either. The ramp is not very big, and then when I fell, I can't tell you really where my other foot was." She finally said "Let's put it down that both feet were on the ramp." In another part of her testimony, when she was asked if she had any knowledge of whether or not there was any kind of foreign material or anything at all wrong with the ramp, she answered, "No, I don't know really." When reminded that she had said earlier that she had slipped, she answered, "I slipped, I assume. * * * Q. Now, do you know why you slipped? A. Well, I know my ankle turned, and that is why I said I slipped." Again, she said, "I think I slipped. Q. Do you know why you slipped? A. No, I don't, it happened so fast." In another part of her testimony she said "I would say I slipped. * * * My foot slipped and the ankle turned. * * * I don't see how the ankle could have turned if I hadn't slipped." She admitted she was headed for the door of her car.

Defendant did not see plaintiff fall. He examined the ramp after she fell and observed nothing on it. He did this in order to ascertain how she fell and why she fell. He found her on the ground at least three feet away from the ramp and said no portion of her body was on the ramp.

The rule as to the duty and liability of an occupier or possessor of land to an invitee has been frequently stated in the decisions of this state and is well settled. The Supreme Court in the case of Harbourn v. Katz Drug Company, Mo., 318 S.W.2d 226, 74 A.L.R.2d 938, has given the applicable rule in the following language: (1. c. 228 and 229)

" * * * the rule as to defendants' duty and liability to one in such status (invitee), as stated in 2 Restatement, Law of Torts, § 343, is as follows: 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm * * *.' "

As noted in the above rule announced by the Supreme Court the basis of defendant's liability is superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know.

In the cases of Hurst v. Chase Hotel, Inc., Mo.App., 421 S.W.2d 532 and Ecker v. Big Bend Bank, Mo.App., 407 S.W.2d 45, in which the facts are similar to those in the instant case, we followed the rule as announced above.

██ It will be observed that the rule provides that defendant had only the alternate duty either to make the ramp reasonably safe or to warn plaintiff of the dangerous condition caused by the slope of the ramp. Defendant did not have the duty to both make the condition reasonably safe and to warn plaintiff of the dangerous condition. If defendant warned plaintiff of the condition or if plaintiff had the same knowledge of the condition as defendant had there would be no liability on the part of defendant. This is because, as we said, liability of an occupier or a possessor of premises is predicated on the occupier's or possessor's superior knowledge of the dangerous condition and the danger therefrom to persons going upon the premises. It is only when the dangerous condition is known to the occupier or possessor of the premises and not known to the person injured, that a recovery is permitted. The alternative duty to keep the premises in a reasonably safe condition for an invitee or to warn him of the dangerous condition applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. Harbourn v. Katz Drug Co., supra. It follows therefore that there is no liability by the occupier or possessor of the premises for injuries from dangers that are obvious, or as well known to the plaintiff injured as to the occupier or possessor of the premises. Lamberton v. Fish, Mo., 148 S.W.2d 544, 1. c. 546.

In the instant case plaintiff was aware of the condition of this ramp. She knew the degree of its slope, having traversed the ramp numerous times over a period of two or three years and more frequently in the period of three or four months just prior to the date of her fall. She was certainly aware of the texture of the surface of the ramp from her frequent passages over it through the period of two or three years. Prior to the date of her fall she had no trouble ascending or descending the ramp and she experienced no slipping of her feet in so traveling the ramp. In fact she said she found her travel to and from the store easier when she used this ramp. The evidence she adduced failed to show that the ramp was wet or that there was any kind of foreign material on the

ramp that may have caused her to fall. She said she saw nothing unusual regarding the ramp. There was nothing in the evidence that indicated a hidden danger, a trap, snare, pitfall or any unknown circumstances surrounding the ramp that would not be observed by her in her travels up and down the ramp. There is nothing in the evidence to show that the condition of the ramp or its slope had ever changed during the period of plaintiff's use. Plaintiff was thoroughly familiar with the degree of the slope from the many trips up and down the ramp.

Defendant had no duty to warn plaintiff of the condition or degree of slope of the ramp because the evidence shows that plaintiff had knowledge of the degree of the slope of the ramp and all of the circumstances connected with the ramp and had as much knowledge of whatever dangerous condition may have existed in traversing the ramp as defendant had or was charged with. On the occasion of her fall there was nothing to prevent her from seeing every circumstance surrounding the ramp; all of which she had observed many times prior to the date of her fall. There is nothing in the evidence to show that the small package she was carrying obscured her vision of the ramp. We think a fair interpretation of her testimony shows that she was not looking at the ramp when she approached it or as she walked down the ramp but was looking towards her car. It was her duty to use her faculties and to look where she was walking. This she did not do.

We said above that the case of Hurst v. Chase Hotel, Inc., supra, presents somewhat similar facts. In that case the garage provided by the hotel was approached from inside the hotel by means of steps to a landing upon which the door to the garage is located. Plaintiff came through this doorway and on the garage side of the door the level floor extends out into the garage a sufficient distance for those entering or leaving to stand upon. The garage floor was made of concrete and

sloped upward to the level of the landing floor. The slope extended about two feet beyond the end of the landing and in that distance fell some six inches. In that respect the slope in the Hurst case was almost as steep as the slope in the instant case. In the Hurst case plaintiff left the hotel through the doorway and stood upon the landing or garage side of the door. We found she had an opportunity to see the slope and that there was nothing to prevent her from seeing the slope. In that case there was nothing in the evidence to show that plaintiff was familiar with the slope. Despite this we held that she was not entitled to recover for her injury and affirmed the trial court's action in sustaining defendant's after-trial motion for judgment in accordance with its motion for a directed verdict.

In the case of Ecker v. Big Bend Bank, supra, the condition causing plaintiff's fall was more dangerous than that of the instant case. In the Ecker case plaintiff stepped down from the top of a retaining wall separating two parking lots on to a curved raised asphalt mound located on defendant's lot which served as a wheelblock for automobiles parked thereon. This mound was approximately five inches high. We held that whatever danger existed was obvious to the plaintiff who had as much knowledge as the defendant, pointing out that it is commonly known that a curved raised surface such as the asphalt wheelblock there involved could cause the person to fall. We concluded that the dangerous condition presented was obvious and known to plaintiff and therefore defendant was entitled to judgment as a matter of law.

In the instant case we rule that plaintiff failed to make a submissible case against defendant.

There is another factor in this case on which we do not rule but we think it deserves comment. Plaintiff in her testimony equivocates as to the cause of her fall. As her testimony shows, she *assumed* she slipped and then she said that she slipped

because her ankle turned. Again she said "I *think* I slipped." Finally saying that she did not know why she slipped because it happened so fast and then she speculated that she must have slipped because her ankle turned. This is far from being substantial evidence to show that the slope of the ramp was the cause of her fall. It is clear that plaintiff must prove that her injury arose from a cause for which defendant is liable and the jury may not speculate from which cause the injury arose.

■ As said heretofore we reserved one of plaintiff's complaints for discussion. In this point urged by plaintiff she contends the trial court erred in excluding the opinion of her expert witness—the consulting engineer " * * * to the effect that based upon a reasonable engineering certainty that there was causal connection between the amount of slope that existed in the ramp * * *" and plaintiff's fall " * * and his further opinion that the amount of slope directly contributed to her fall * *." We see no error in excluding this evidence. We first point out that plaintiff did not preserve this point for review because it is not set out in her motion for new trial. In her motion for new trial she merely complains, "The Court erred in excluding relevant, competent and material evidence offered on behalf of the plaintiff upon improper objections by the defendant." This is merely a general statement and does not inform the trial court of the error that is complained of in this court. State ex rel. Kansas City Power and Light Co. v. Salmark Home Builders, Inc., Mo., 375 S.W.2d 92. However, it is clear that this evidence should not have been admitted unless it is clear that the jury was not capable from want of experience or knowledge of the subject to draw correct conclusions from the facts proved. The instant case presents a situation where the jurors should be capable of evaluating intelligently from their own experience the cause of plaintiff's fall. The jurors had before them the testimony of the consulting engineer as to the size of the ramp and degree of slope and its surface texture, photographs of the ramp and a piece of the surface area of the defendant's parking lot which was made of the same material contained in the surface of the ramp. All of this was before the jury. All jurors today have had experience in traversing ramps of the nature of the one on which plaintiff said she fell and of other ramps and steps. Such travels and experiences were within the common experience of the ordinary juror. We think that from these ordinary experiences which we are certain all jurors have had that a jury of laymen would be able to form an intelligent opinion as to the cause of plaintiff's fall. Housman v. Fiddyment, Mo., 421 S.W.2d 284; Cole v. Empire Dist. Electric Co., 331 Mo. 824, 55 S.W.2d 434; Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., 358 Mo. 727, 216 S.W.2d 464. We find no error in the exclusion of this evidence.

■ We find that the plaintiff failed to make a submissible case against the defendant, but inasmuch as the verdict of the jury and the judgment of the court was for the right party the judgment should be affirmed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.