James M. CUNNINGHAM, Respondent,

v.

BELLERIVE HOTEL, INC., a Missouri corporation, Appellant.

No. 56339.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1973.

Robert L. Shirkey, James C. Morris, Shirkey, Morris & Cox, Kansas City, for respondent.

John C. Risjord, Thomas F. Gordon, Gordon, Adams, Niewald & Risjord, Kansas City, for appellant.

HENRY I. EAGER, Special Commissioner.

This action is one for damages resulting from a fall in the parking area of the defendant on the evening of October 4, 1966. There was a nine-man jury verdict for the defendant; the trial court set aside the verdict and judgment and granted a new trial on the ground that the verdict was against the greater weight of the credible evidence, and also upon an additional ground, which we shall mention later. The prayer of the petition was for $35,000 and the notice of appeal was filed prior to January 1, 1972. We have jurisdiction. It will be necessary for us to decide whether the plaintiff made a submissible case.

Plaintiff was the President of James M. Cunningham, Inc., a manufacturer's agent for fabrics and wallpaper. As such, he sold direct to interior decorators, decorating departments of stores, etc.; he lived in Oak Park, Illinois, but exhibited his products over a wide area, including Kansas City. There, his custom over the years had been to set up his exhibits at the Bellerive Hotel, and invite his prospective customers to view them there. In recent years the plaintiff had traveled and brought his material by car, and his visits usually lasted about a week. The Bellerive was located at the northeast corner of Armour and Warwick Boulevards in Kansas City, facing south; its parking area, holding perhaps 40 to 50 cars, was back of the building to the north, and across an alley. Parking spaces were marked off along the east and west sides, with two rows down the center. The entrance and exit (combined) consisted of an open space in the center of the south end, immediately back of the hotel. The paving of the lot was blacktop. The lighting consisted of four lights on a pole somewhere near the center of the lot, and a single bulb at the back door of the hotel. Plaintiff had used this lot on previous occasions, perhaps eight to eleven times in five years.

On the day in question plaintiff and his four customers had planned to have dinner at the home of one of the customers, Mr. Lewis J. Vander Kolk, who lived in Prairie Village, Kansas. Mr. Vander Kolk and a Mr. Payne left the display room first, picked up Vander Kolk's car on the street and drove it around to a position just inside the parking area, headed northeast. He was to drive ahead of the others so that they could follow him home. Plaintiff and the other two men were delayed slightly because they could not get out of the rear door of the hotel. They proceeded to the lot, where the other two turned left toward the car of one of them, while plaintiff walked over near Vander Kolk's car to explain the delay. He then turned and started to join the other two at their car, walked westerly or northwesterly rather

close to the alley for about six or seven steps, and then fell rather violently to the pavement. He testified that he had fallen in "a rather large hole" in the paving which he only observed after he fell; also, that he was thrown forward violently as he fell. The hole was variously described as about two by two and one-half feet, as 14 to 18 inches long and not quite so wide, and as four and one-half feet in diameter; the depth was described as from two to four or five inches, and also as three inches. Plaintiff, who only observed it immediately after he fell and, while as he said he was *in it*, could not state the depth. The place was referred to as a hole, an indentation, a chuck hole and a depression. The record indicates that the edges were not broken but sloping. It was in plaintiff's line of travel and its color was the same as the paving elsewhere. One witness who had been an employee of defendant in charge of its building and grounds at the time testified: that the "indentation" had been there for six years to his knowledge; that he occasionally filled other cracks, crevices and indentations, but apparently had done nothing to this one prior to the fall. Plaintiff attempted over *objection to show that the hole had been* filled in since; the objection was sustained, and that question is not before us on this appeal, although the jury perhaps understood the contention. Three photographs of the lot, one greatly enlarged, were received. They show very little as to the nature of the hole or depression and are not dated. Markings were placed on these to show the approximate location of the hole and of Vander Kolk's car. The depression was not far inside the parking lot. These exhibits appear to indicate some repair at the site of the hole or depression.

The extent of the darkness at the time was described as "relatively dark," "dusk," "getting on toward darkness," as "almost totally nighttime," and as "not pitch dark." As to the artificial lighting plaintiff testified that there was a "diffused light" in the lot, but that "probably the light was

not sufficient at that spot"; he also said: that, as he recalled, there was a car near the area where the hole was, and that it undoubtedly "cast a shadow of some kind"; that the only reason he could give for not seeing the hole was that the light was not sufficient at that spot. He could see the car toward which he was walking. Plaintiff had no notice of the condition and testified that he was aware of nothing to cause him any concern. He further testified that he was looking where he was going, in the way one would normally walk, and looking in the direction in which he was walking, but was not looking down or concentrating on the paving immediately in front of him; and that he might have seen the hole had he done so. Plaintiff received substantial injuries, principally the fracture of and the loss of a portion of his right kneecap. The extent of his injuries is not material here.

■ The trial court overruled defendant's motion for a directed verdict. As already stated, however, the Court set aside the verdict and judgment for defendant and granted a new trial on the ground that the verdict was against the weight of the "credible evidence." In such event we are required to examine the record to see if there was substantial evidence to support a verdict for plaintiff, for it is only where there is not such substantial evidence that we may hold the ruling to be an abuse of discretion. Overbey v. Fodde, Mo., 420 S. W.2d 510; Leonard v. Bartimus, Mo.App., 463 S.W.2d 579; Nance v. Kimbrow, Mo. App., 476 S.W.2d 560; Clark v. Quality Dairy Co., Mo., 400 S.W.2d 78.

■ Defendant contends that plaintiff made no submissible case, because (1) no actionable negligence was shown; and (2) plaintiff was guilty of contributory negligence as a matter of law. We first consider (1). The liability of an owner or possessor of land to an invitee is based primarily upon his superior knowledge of a danger which he knows or should know of under such circumstances that he should expect that the invitee would not discover or realize the danger. Gilpin v. Gerbes Supermarket, Inc., Mo., 446 S.W.2d 615. Defendant's position is that the hole or depression in its parking lot was so obvious to the plaintiff that he may not claim the benefit of that rule. This is based primarily upon statements of plaintiff on cross-examination that if he had been looking down immediately in front of him he probably would have seen the condition, and that he was not "concentrating" on the pavement. The evidence shows these facts: there was clearly some kind of a significant hole or depression in the paving of the lot, and near the entrance; that it had been there for at least six years, which takes care of all questions of notice to defendant; that it was obviously less noticeable at night than in the daytime, regardless of the lighting; and that on plaintiff's evidence there was some question as to the sufficiency of the lighting insofar as it concerned seeing the hole at night. The plaintiff was undoubtedly a business invitee. On this evidence we are unable to say that the defect was so obvious under these circumstances that the defendant could safely assume that a business invitee would discover it and realize the danger. Plaintiff was only required to walk, and *look,* as an ordinarily careful person would, and he was not required to peer down at the paving in front of him at each step, for he had no reason to anticipate danger, and defendant had no right to assume that he would. The defect here was not one which could be said to be in "plain view" under the circumstances. The question is more properly a part of the contention on contributory negligence and we shall discuss it and cite certain cases there. Defendant had a positive duty to light the premises adequately. Shute v. Prom Motor Hotel, Inc., Mo.App., 446 S.W.2d 137, and the evidence as to the sufficiency of the lighting was not such as to remove that element entirely from the case, as a matter of law. Defendant produced no evidence and relied solely on plaintiff's cross-examination. The cases of Hurst v. Chase Hotel, Inc., Mo.App., 421 S.W.2d 532 and Cates v. Evans, Mo.App., 142 S.W.2d 654

are based upon factual conclusions that the offending object was as apparent to the plaintiff as to the owner. We do not find that to be our situation, and there is "no exact test of obviousness." Hurst, supra.

The more substantial question is whether plaintiff was guilty of contributory negligence as a matter of law. We hold that he was not. As already indicated, he testified that he was looking where he was going, and walking in the way in which one would normally walk. He knew of nothing constituting a danger, anticipated none, and had no reason to suspect any. Under these circumstances, he was not required to look down at his feet or the pavement at every step, or to survey the pavement with a "critical eye," or walk with his eyes "glued upon" the pavement. The following cases state these principles in varying detail. Burch v. Moore's Super Market, Inc., Mo., 397 S.W.2d 590; Daggs v. Patsos, Mo.App., 260 S.W.2d 794; Miles v. Ozark Bowl, Inc., Mo.App., 250 S.W.2d 849; Freeman v. Myron Green Cafeterias Co., Mo., 317 S.W.2d 303; Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695; Essenpreis v. Elliott's Dept. Store Co., Mo. App., 37 S.W.2d 458; Willis v. Rivermines IGA Supermarket, Mo.App., 350 S.W.2d 437; Swanson v. Godwin, Mo., 327 S.W.2d 903; Dean v. Safeway Stores, Inc., Mo., 300 S.W.2d 431; Kelley v. Kansas City, 153 Mo.App. 484, 133 S.W. 670; Caley v. Kansas City, 226 Mo.App. 934, 48 S.W.2d 25. Some of the foregoing were parking lot cases. In defendant's cited case of Bond v. Kansas City Transit, Inc., Mo., 401 S.W.2d 440, the Court said, loc. cit. 443: "While a plaintiff is not under a duty to *look closely* for danger where there is no reason for him to anticipate danger, the converse is true and if there is reason to anticipate danger, the defendant is under a duty to exercise ordinary care to look and ascertain if danger is present." In that case the plaintiff stepped off a bus into a rough and rutted area of ice and frozen snow lying between the rear door of the bus and the curbing three or four feet away. It was daylight and the area

was visible. She did not look at this area until she had started her last step, although she had looked at, and seen, the condition of the sidewalk. We do not regard those circumstances as at all similar to ours.

The other case cited by defendant is Drury v. City of St. Louis, Mo., 367 S.W. 2d 494. There, a pedestrian, running along a sidewalk in the rain, attempted to jump across the parkway to the street, not seeing an iron railing running along the edge of the sidewalk. Plaintiff made no complaint of the lighting. The Court held that the obstruction was plainly visible, and reversed plaintiff's judgment. The facts are distinguishable from ours; and there the plaintiff was attempting to do something which was certainly not inherent or usual in the course of the travels of an ordinarily prudent person.

In the context of the full record and in consideration of the authorities which we have examined, we hold that plaintiff was not guilty of contributory negligence as a matter of law. It follows that the trial court did not abuse its discretion in granting a new trial on the weight of the evidence, for plaintiff made a submissible case.

The other, or alternate, ground stated in the order was that the Court "erred in permitting defense counsel over objection of plaintiff to prove the plaintiff had been reimbursed for medical expense incurred in his own behalf through insurance carrier, thus falling within the collateral source rule." That subject was developed rather extensively at the trial, and it may well have had some effect on the jury. However, we have ruled that a new trial was properly granted upon a discretionary ground, and no further support for the ruling is necessary.

The order granting a new trial is affirmed and the cause is remanded.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.