**Elmer L. MORRIS and Ethel P. Morris, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 83–1009–CV–W–1.

United States District Court, W.D. Missouri, W.D.

May 3, 1984.

Dan K. Purdy, Osceola, Mo., for plaintiffs.

Robert G. Ulrich, U.S. Atty., Anita L. Mortimer, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

JOHN W. OLIVER, Senior District Judge.

### I.

This is a Federal Tort Claim action. The plaintiffs are the parents of David Allen Morris who lost his life when a motor vehicle he was driving struck an earthen berm constructed partially across a roadway on land within the Harry S. Truman Dam and Reservoir project. It is necessary that we state in some detail the procedures under which the case was submitted for decision on a fully stipulated record.

### A.

Plaintiffs' complaint alleged that plaintiffs' administrative claim had been improperly denied and then alleged in paragraphs 7 through 10 of their complaint the following:

7. That prior to the 17th day of July, 1982, Defendant herein, took possession of and control of a certain portion of former Missouri Highway 82 where said highway intersects with the body of the Truman Reservoir, and purported to place a "barricade", on top of an earthen berm, which extended partially across said roadway.

8. That on or about the 17th day of July, 1982, Plaintiff's decedent, David Allen Morris, was operating a motor vehicle in a generally westerly direction on old or former Missouri Highway 82 at or near that point where it intersects with the body of water known as the Harry S. Truman Resevoir, when he struck the earthen berm constructed partially across the roadway, causing the motor vehicle which he was operating to be upset, turning over, thereby causing the death of the said David Allen Morris.

9. That Defendant, the UNITED STATES ARMY CORPS OF ENGINEERS were negligent in that said Defendant failed to properly close said roadway, or to post signs indicating the closure of said roadway, all in violation of the Manual on Uniform Traffic Control Devices; that the Defendant, the UNITED STATES OF AMERICA, failed to indicate an appreciable distance from the point where said roadway enters that body of water known as Harry S. Truman Reservoir, that said road was a

dead-end road, with no outlet; further that the earthen berm constructed by the Defendants, which extended partially across said roadway, was not illuminated, nor was it cleared of weeds and other materials so that the signs which had been installed at the top of said earthen berm, could be clearly distinguished at nighttime with the headlights of a motor vehicle.

10. That as a direct and approximate [sic] result of the aforesaid wrongful acts of the Defendants, Plaintiffs herein have suffered the loss of their said son; have incurred substantial expense for medical attention, ambulance expense, as well as funeral expenses; in addition to the pain and the suffering sustained by Plaintiff's decedent, David Allen Morris prior to his death.

The defendant admitted in paragraph 7 of its answer that "it placed an earthen berm across the westerly bound lane of traffic approximately 375 feet west of and within the project boundary on a portion of former Missouri Highway 82, said portion located between Brush Creek and Weableau Creek, in St. Clair County, Missouri [and] that it placed reflectorized delineators or markers on top of or in the earthen berm." In paragraph 8 of its answer, the defendant further admitted "that on or about 17 July 1982, plaintiffs' decedent, David Allen Morris, was operating a motor vehicle in a generally westerly direction on old or former Missouri Highway 82, when he struck an earthen berm constructed partially across the roadway and that, as a result of the accident, David Allen Morris died [and] that, at the time of the accident, the earthen berm was located at a point approximately 370 to 380 feet east of the edge of the water known as Truman Lake."

Defendant alleged in its answer as an affirmative defense that "The court lacks jurisdiction over the subject matter of this action for the reason that any claim based upon the facts alleged in plaintiffs' complaint falls within the discretionary function exception to the Federal Tort Claims Act as set forth in 28 U.S.C. § 2680(a)."

Defendant's answer also pleaded a number of additional defenses which alleged in substance that the defendant did not violate any duty owed plaintiff; that defendant's conduct was not the proximate cause of plaintiff's death; that David Allen Morris' conduct was the sole direct proximate cause of his death; and that the decedent was contributorily negligent under the circumstances. Those defenses will be discussed in part IV of this memorandum opinion.

B.

A combined scheduling and discovery conference was held in this case. Thereafter the Court, by formal order, approved the parties' agreement that they would, after the close of discovery, hold an across-the-table conference on or before March 2, 1984 for the purpose of agreeing upon (i) a stipulation of fact regarding the authenticity of all documentary evidence; and (ii) a stipulation of additional facts designed to avoid unnecessary proof.

The case was further considered at final pretrial conference on March 20, 1984 and set for trial on a nonjury trial docket to commence April 9, 1984. On April 6, 1984 defendant filed a submission to which it attached copies of (1) defendant's proposed stipulation to the authenticity of documents; (2) defendant's proposed stipulated findings of fact; (3) defendant's proposed stipulation regarding the testimony of Dr. Donald Goodwin; (4) defendant's proposed stipulation in regard to the testimony of Charles Durham; and (5) defendant's proposed stipulation in regard to the testimony of Doris Brendel.

The defendant's April 6, 1984 submission stated that the issue of liability in this case could be tried on the basis of a stipulated record; that the stipulations of fact and testimony proposed by the defendant were reasonable stipulations based upon information available to or discoverable by both the plaintiffs and the defendant in this case; and that the defendant had made

diligent efforts to contact counsel for the plaintiffs to discuss proposed stipulations and other matters regarding the trial of the case, but that counsel for the plaintiffs failed or refused to cooperate in these regards.

When the case was reached for trial on April 9, 1984, counsel for both parties executed all five of the stipulations that defendant had proposed in its April 6, 1984 submission. The only change made in the stipulations as proposed by the defendant was the addition of paragraph 36 to the stipulation to the authenticity of documents which added a copy of the Manual on Uniform Traffic Control Devices as an exhibit in the case.

### C.

The transcript of the proceedings on April 9, 1984, the day this case was reached for trial, will show that the parties agreed with the suggestion stated in defendant's April 6, 1984 submission that the issue of liability could and should be determined on the record established by the five stipulations executed by the parties on that day. We therefore incorporate by reference all five of the stipulations, together with the various exhibits identified therein, as the undisputed findings of fact of this case.[1] The factual inferences which may properly be made with regard to the undisputed factual circumstances will be stated in later parts of this memorandum opinion.

### II.

The defendant contends that the government's placement of the earthen berm and its determination of the type and placement of the "Road Closed" sign and its placement of the reflectorized markers on top of the berm fall within the discretionary function exception of the Federal Tort Claims Act as set forth in 28 U.S.C. § 2680(a). We disagree.

Defendant's trial brief quotes but does not properly apply that portion of *Dalehite*

*v. United States,* 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427 (1953), which limits the applicability of the discretionary function exception of Section 2680(a) to the "planning rather than the operational level." Defendant's brief does not cite or discuss *Indian Towing Company v. United States,* 350 U.S. 61, 64, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1954), *Rayonier, Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957), or the recent Eighth Circuit cases of *Gross v. United States,* 676 F.2d 295, 302 (8th Cir.1982), and *Madison v. United States,* 679 F.2d 736, 739 (8th Cir.1982), all of which state the principles to be applied in determining whether a particular governmental decision should be considered as a planning or as an operational decision.

We are satisfied that the government's decision in regard to what roads within the Truman Dam area should or should not have been closed must be considered as a decision involving policy and therefore within Section 2680(a)'s discretionary function exceptions. On the other hand we find and conclude that the decisions regarding the use and placement of berms, completely or partially across a particular road, and decisions in regard to how a particular berm and how a particular closed road was to be marked involve routine operational level decisions that fall outside the Section 2680(a) exceptions. *See Foster v. United States,* 183 F.Supp. 524 (D.N.M.1959), *aff'd without written opinion,* for the reasons stated in the trial court's memorandum opinion in 280 F.2d 431 (10th Cir.1960), in which it was held that the government's alleged negligence in failing to place guardrails on a bridge across a canal and an alleged failure to keep a fence on the side of the canal do not fall within the exceptions of Section 2680(a). *See also American Exch. Bank of Madison, Wis. v. United States,* 257 F.2d 938 (7th Cir.1958), holding that the government's alleged negligence in failing

---

**1.** Those five items were attached to the original version of this memorandum opinion as appendices but it would serve no useful purpose to include those voluminous records in the published version. Therefore, we have omitted them here.

to erect and maintain railings or handrails on steps leading to a post office entrance was not within the exceptions of Section 2680(a); *Driscoll v. United States,* 525 F.2d 136 (9th Cir.1975), which involved an alleged failure to install appropriate warning and control devices or cross walks on an Air Force base; and *Smith v. United States,* 546 F.2d 872 (10th Cir.1976), which held that the government's decision in regard to the placement of warning signs and barriers blocking access to a particular super-heated thermal pool in Yellowstone Park was not within the exception of Section 2680(a).

Our determination that plaintiffs' claim does not fall within the discretionary function exception of Section 2680(a) decides no more than a preliminary question presented under the circumstances of this case. We decide another preliminary question presented by the plaintiffs in the next part of this memorandum opinion.

### III.

As above noted, plaintiffs agreed to and accepted all of the stipulations of fact in exactly the form as proposed by the defendant except that plaintiffs requested that a copy of the Manual on Uniform Traffic Devices be marked as plaintiffs' Exhibit 36 and added as one of the exhibits to be considered in evidence in this case. Plaintiffs, relying solely on a portion of that exhibit and upon pictures of the "Road Closed" sign, of the berm and of the markers on the top of the berm which were taken by the defendant after the accident, proposed a finding of fact to the effect that "the road was not marked in accordance with the Manual of Uniform Traffic Control Devices."

■ Consistent with that proposed finding of fact, plaintiffs further proposed that the Court conclude as a matter of law that because "the road closure in the instant case did not comply with the Manual [it cannot] be said that the road closure in this instance was done with due care." Although particular portions of plaintiffs' legal argument concerning the requirements

of the Manual related to the question presented in regard to the exception of Section 2680(a), it is clear that plaintiffs implicitly base their alleged right to recover on the theory that a finding that defendants had, in fact, failed to comply with the Manual, requires that this Court conclude that defendant should be held liable as a matter of law. We disagree.

Plaintiffs direct attention to the "front sheet in Exhibit 36" to support their argument that the requirements of the Manual were "made mandatory by law" and that an alleged violation of a requirement of the Manual would establish defendant's liability. The "front sheet" of the Manual simply stated that the Manual had been "Approved by the Federal Highway Administrator as the National Standard for all Highways open to public travel in accordance with Title 23, U.S.Code, Sections 109(b), 109(d) and 402(a) and 23 CFR 1204.-4."

The various sections of Title 23 there cited are no more than references to particular sections of (1) the Federal-Aid Highway Act, parts of which were first enacted in 1916, and are now codified in 23 U.S.C. § 101, *et seq.,* and (2) the Highway Safety Act, enacted in 1966, and now contained in 23 U.S.C. § 401, *et seq.* Section 1404.4 of 23 CFR did no more than establish uniform standards for State highway safety programs. Highway Safety Program Standard No. 12, relating to highway design, construction, and maintenance set forth in that regulation simply provided that "Every State in cooperation with county and local governments shall have a program of highway design, construction, and maintenance to improve highway safety." In addition, General Provision 1A–4 of the Manual expressly stated "It is the intent of the provisions of this Manual to be standards for traffic devices installation, *but not a legal requirement for installation."* (Emphasis ours). It is further clear that, as a matter of fact, the "Road Closed" sign and its use did, in fact, comply with part 2B–39 of the Manual.

The legal authorities cited and discussed in *Miller v. United States*, 710 F.2d 656 (10th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), establish that neither the Federal-Aid Highway Act nor the Highway Safety Act create an implied private cause of action to recover damages for personal injuries sustained as a result of an alleged violation of any standard set forth therein or in any regulation promulgated pursuant to either Act. *Miller* involved an action brought under both the Federal Tort Claims Act and the Federal Highway Safety Act. Plaintiffs in that case, husband and wife, were the driver and occupant of a Volkswagen "bus" which skidded off a narrow shoulder adjacent to U.S. Highway 6 in Colorado and down a sharp embankment.

█ In regard to the question presented under the Federal Tort Claims Act both the district court and the Tenth Circuit held that the alleged negligent actions of the Department of Transportation were within the discretionary function exception of Section 2680(a) under the factual circumstances presented in that case. In regard to the Government's alleged negligence in failing to comply with the design criteria as mandated in the Federal-Aid Highway Act, the Highway Safety Act and in other government manuals and standards, including but not limited to the Manual on Uniform Traffic Control Devices, it was held that the ultimate question presented was whether or not a private cause of action could be implied for a violation of those statutes and the regulations in the Manual. *Miller* concluded that application of the familiar standards stated in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), required a determination that the plaintiffs could not maintain any private cause of action under the Federal Highway Safety Act. We agree.

Having decided in part II that defendant's actions did not fall within the discretionary function exception of Section 2680(a) and having decided in this part III that plaintiff is not entitled to maintain an implied private cause of action for any alleged violation of any provision in the Manual, we turn to the question of whether plaintiffs carried the burden of proof under the Federal Tort Claims Act "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The alleged negligent acts occurred in Missouri and the applicable law, of course, is the law of Missouri.

## IV.

### A.

Under applicable Missouri law, plaintiffs have the burden of proving every essential element of their negligence action, including proximate causation. *Lindsay v. Wille,* 348 S.W.2d 1, 4 (Mo.1966); *Steele v. Woods,* 327 S.W.2d 187, 197 (Mo.1959); *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. 1976), establishes that under Missouri law a plaintiff in a negligence action must establish (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure.

Section 28 U.S.C. § 1346(b) requires that we consider the duties imposed by Missouri law on private persons who occupy or possess land to persons who enter upon that land as an invitee under Missouri law. One of the defendant's proposed conclusions of law (No. 11) suggested that "If the defendant is to be liable in the same manner that a private individual in possession of private property opened to the general public free of charge would be liable, then a determination first has to be made as to whether or not the individuals coming onto the property in question are trespassers, licensees or invitees." Defendant also cited an early Missouri case, *Gillihand v. Bondurant,* 332 Mo. 881, 59 S.W.2d 679, 688 (1933), to support another proposed conclusion of law that would state that: "To be an invitee, there must be a real benefit to the owner."

There can be no doubt, as recognized in *Cunningham v. Hayes,* 463 S.W.2d 555,

558 (Mo.App.1971), that in many of the earlier Missouri cases the status of a person going upon land as a trespasser, or as a licensee, or as an invitee, was considered to be decisive in the determination of the duty owed by the possessor of the land. *Cunningham*, however, cited the numerous Missouri cases which freely transcended "such common-law categories (and thus, the concomitant standard of care) when the justice of the case required." That case added that "these decisions have recognized that it is the likelihood of presence with its consequent possibility of harm, and not technical status alone, which underlies a possessor's duty of care to the entrant."

*Cunningham* therefore appropriately concluded that once a person's "presence became known, whether that of an invitee, licensee, or trespasser, the significance of status largely disappears, and a uniform duty—that of reasonable care—is owed to each as to activities conducted on the premises." See also *Penberthy v. Penberthy*, 505 S.W.2d 122, 126 (Mo.App.1974), and *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. 1976), where the same principle is stated in substantially identical language. Accordingly, we reject the defendant's argument based on abandoned common-law concepts of status.

We conclude that if a private person possessed the Truman Lake land involved in this case, such a person would be considered a possessor of land and subject to liability for violation of the duties owed an invitee entering upon that land as defined by the rules of decision of the courts of Missouri.

*McClure v. Koch*, 433 S.W.2d 589, 592 (Mo.App.1968), accurately stated that: "The rule as to the duty and liability of an occupier or possessor of land to an invitee has been frequently stated in the decisions of this state and is well settled." *McClure* cited *Harbourn v. Katz Drug Company*, 318 S.W.2d 226, 74 A.L.R.2d 938 (Mo.1958), and quoted the applicable rule as stated in that case as follows: "the rule as to defendants' duty and liability to one in such status, as stated in 2 Restatement, Law of

Torts, § 343, is as follows: 'A possessor of land is subject to liability for bodily harm caused by business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm .... ' "

The Supreme Court of Missouri in *Harbourn*, in reliance upon many earlier Missouri cases held that:

> The owner or occupier is not an insurer of the business invitee's safety, *Main v. Lehman*, 294 Mo. 579, 243 S.W. 91[2], and the basis of his liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. [citing cases]. It follows that when the condition contended to constitute an unreasonable risk is obvious to one in the exercise of ordinary care, or is actually known to the invitee, there is no duty on the owner or occupier to warn him. [citing cases]. Therefore an owner or occupier is not liable for injuries resulting from open and obvious conditions which are or should be as well known to the invitee as to the owner or occupier. [citing cases].

The recent Missouri case of *Chism v. White Oak Feed Co., Inc.*, 612 S.W.2d 873 (Mo.App.1981), noted that "The cases dealing with the liability of possessors of land to invitees are legion." That case concluded that the "pertinent standards defining the duty of a possessor are set forth in Restatement of Torts 2d, Condition and Use of Land, §§ 343 and 343A(1) (1965)" and appropriately added in a footnote that "while these sections have not been expressly adopted by our Supreme Court in defining the duty of a possessor, they have

been relied upon for guidance in countless decisions."

It is thus apparent that the courts of Missouri have consistently cited and applied both Section 343 of the original Restatement of Torts and Sections 343 and 343A of the Restatement of Torts, Second in their numerous cases stating the applicable law of Missouri. None of those cases suggest that the courts of Missouri consider that Section 343 of the Restatement of Torts, Second and the addition of new Section 343 A in the Restatement of Torts, Second made any substantial change in the rule initially stated in Section 343 of the original Restatement. Such a view is consistent with the Reporter's Notes to Section 343 as contained in the Appendix to the Restatement of Torts, Second which state that "this Section has been changed from the first Restatement by condensing and rewording it."

The portion of original Section 343 which codified the alternative duty imposed upon a possessor land in regard to known or obvious dangers was included in new Section 343A of the Restatement of Torts, Second. That new section reiterated the rule in regard to known or obvious dangers as originally stated in Section 343 of the first Restatement. Comment *e* to the new Section 343A makes clear that the possessor of land may reasonably assume that an invitee "will protect himself by the exercise of ordinary care" and that "reasonable care on the part of the possessor therefor does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them."

The Reporter's Notes to Comment *e* to new Section 343A reiterated the established rule that "normally there can be no recovery by the invitee for conditions which are known to him, or which are so obvious that he may reasonably be expected to discover and appreciate the danger." The Reporter's Notes that cited three Missouri cases as consistent with the principle of law stated.

*Kelly v. Dairy Queen Enterprises, Inc.,* 581 S.W.2d 903 (Mo.Appeal 1979), cited and quoted §§ 343 and 343A of the Restatement of Torts, Second and made clear that under those sections, consistent with the original Restatement and with earlier Missouri cases which cited and relied upon Section 343 of the original Restatement, that "if the dangerous condition is obvious and known, or in the exercise of ordinary care should be known by the invitee actionable negligence is not established."

### B.

■ Application of the established Missouri law to the undisputed factual circumstances of this case requires that we find and conclude that the plaintiffs have failed to establish that the defendant breached any duty owed the plaintiffs' decedent. Plaintiffs have failed to carry the burden of proving that the defendant failed to discharge its alternative duty to exercise reasonable care to protect or to warn invitees coming on the Truman Dam land from any alleged danger that may have been created by the closing of the road or by the placement of the berm across old Highway 82. We find and conclude that the defendant discharged its alternative duty by appropriately warning all invitees of any condition created by the placement of the berm by its posting of the "Road Closed" sign and by its placement of the reflectorized markers on top of the berm.

We further find and conclude that whatever danger may have been created by the closing of the road or by placement of the berm was, in fact, a condition which would be obvious and apparent to any invitee who was acting in the exercise of ordinary care. The undisputed evidence in this case establishes that the decedent was not exercising ordinary care in that he was driving his vehicle while intoxicated at a speed of 50–55 miles per hour after passing the "Road Closed" sign.

It is undisputed that the examination of the decedent's blood alcohol content showed a concentration of .2 percent. It is further undisputed that a person with such

a blood alcohol concentration would "clearly be intoxicated"; that "his judgment would be adversely affected"; and that "at the .2 percent level one could predict with a high degree of confidence that the person would be severely impaired." Plaintiffs did not adduce any evidence that would even suggest that the decedent was, in fact, exercising ordinary care at the time the automobile he was driving struck the berm.

The duty imposed upon the defendant under Missouri law did not require it to take precautions or to make warnings beyond that which would be adequate to protect persons who were exercising ordinary care for their own safety. We find that the placement of the "Road Closed" sign and the placement of the reflectorized markers on the top of the berm discharged the alternative duty that defendant owed to plaintiffs' decedent under the undisputed factual circumstances of this case. Defendant's compliance with its alternative duty requires that we find and conclude that plaintiffs have failed to adduce sufficient credible evidence to establish a breach of any duty under the circumstances.

■ We further find and conclude that plaintiffs cannot recover for still another reason; plaintiffs failed to adduce any credible evidence that could be said to support a finding that defendant's actions, rather than those of the plaintiffs' decedent, were the proximate cause of the decedent's death. We find that the undisputed factual circumstances clearly establish that decedent's state of intoxication was the proximate cause of his death. We therefore conclude that judgment must be entered for the defendant under that alternative finding of fact.

*Epling v. United States*, 453 F.2d 327 (9th Cir.1971), is the closest Federal Tort Claims Act case on the facts found by our independent research. In that case the plaintiff was riding a motorcycle with a female passenger behind him when he turned off Route 66 near Winslow, Arizona onto an access road which led to a radar station which had been deactivated by the Air Force. Both plaintiff and his passenger testified that they did not see a sign posted immediately after the access road left Route 66 which read:

### WARNING

### RESTRICTED AREA

It is unlawful to enter

within this area without

written permission of

the Commander.

Another sign posted near that sign stated that the speed limit on the road was 5 miles per hour. Both the plaintiff and his passenger testified that they did not see that sign. About one-half mile up the road a steel cable was stretched across the road on which a wooden sign, hung in the middle of the road, read "Stop—Do Not Enter." Both plaintiff and his passenger testified that neither saw the cable or that sign. Plaintiff hit the cable, was hurled from his motorcycle and was seriously injured.

*Epling* is distinguishable from this case in that the district court found that the road on which the cable was strung was a private rather than a public road. The Ninth Circuit, however, concluded that the Arizona Supreme Court would apply the rule stated in Section 335 of the Restatement of Torts, Second which imposed a duty upon the land owner to give an adequate warning to persons traveling on a private road. The question presented in *Epling* of whether an adequate warning was given by the two signs posted at the beginning of the access road and by the sign on the cable stretched across the road discharged the landowner's duty to warn is similar to the question presented in this case as to whether the "Road Closed" sign and markers on the berm discharged the defendant's alternative duty to warn under the stipulated circumstances of this case.

The Ninth Circuit in *Epling*, affirmed the district court's judgment for the defendant holding that: "The sign at the beginning of the access road gave notice to all that entrance onto the premises was

allowed only with permission of 'the Commander.'" In regard to the cable across the road the court stated that: "The record in the instant case indicates that the cable across the roadway could be seen from a considerable distance."

The Ninth Circuit also noted that it was undisputed that the plaintiff was driving his motorcycle at a speed of 25 miles per hour "in a zone clearly marked 5 mile speed limit." The Ninth Circuit therefore concluded that "these facts are sufficient evidence to support the district court's decision that the government was not negligent in constructing and maintaining the cable and the road, that Epling was contributorily negligent and that his negligence proximately caused the accident."

We do not believe that under the applicable law of Missouri it is necessary that we reach the question of whether plaintiffs' decedent was contributorily negligent for the reason we have concluded that plaintiffs have failed to carry the burden of proving that the defendant was negligent. Absent the establishment of negligence, the question of a plaintiff's contributory negligence simply is not presented.

If, however, it were appropriate to reach the question of contributory negligence, we would be required to find that plaintiffs' decedent was, in fact, contributorily negligent. Such a finding is consistent with our determination that plaintiffs' decedent did not exercise ordinary care for his own safety when he drove the automobile at 50–55 miles per hour while intoxicated and thus failed to heed the obvious warnings given by the "Road Closed" sign and by the reflectorized markers which defendant placed on the top of the berm. In regard to those markers and their visibility we expressly reject plaintiffs' proposed finding of fact to the effect that the weeds and vegetation which grew around the base of the markers somehow "served to reduce their reflectibility." There simply is no evidence to support such a proposed finding of fact. The pictures show that a substantial portion of the marker that was not knocked down when the decedent's car hit the berm was not in any way covered by any weeds.

## V.

We believe it is appropriate that we state the reasons why the three Missouri cases relied upon by the plaintiffs do not support their claim so that those plaintiffs will be advised that we have carefully considered all of the legal authority relied upon by them in their effort to recover damages for the tragic death of their son. Plaintiffs state in their proposed conclusions of law that: "It is respectfully submitted that this case is governed by the cases of *Chance v. City of St. Joseph*, 195 Mo.App. 1, 190 S.W. 24 (1916), and *Morris v. Israel Brothers, Inc.*, 510 S.W.2nd 437 (1974)." Plaintiffs also cite and rely upon language quoted from *Kinder v. Pursley*, 488 S.W.2d 937 (Mo.App.1972). Those are the only cases which plaintiffs cite in support of their pending Federal Tort Claims action.

*Chance v. City of St. Joseph, supra,* involved the liability of a municipality for its alleged failure to erect any barricade of any sort across a street which dead-ended at the top of a bluff in St. Joseph, Missouri. Both *Indian Towing Company v. United States*, 350 U.S. at 65, 76 S.Ct. at 124, and *Rayonier v. United States*, 352 U.S. at 319, 77 S.Ct. at 376, make clear that under the Federal Tort Claims Act the United States is liable in the same manner and to the same extent as a private individual and that the rules applicable to the liability of a municipal corporation are not the rules applicable to a private individual.

The fact that evidence was adduced in *Chance* which strongly tended to establish that the plaintiff was, at least to some extent, under the influence of liquor, was considered to be immaterial in regard to the liability of the City of St. Joseph. The Missouri Court of Appeals properly concluded that all persons, "drunk or sober, were entitled to have the City erect a barricade to show that a street came to an end."

Both *Morris v. Israel Brothers, Inc.* and *Kinder v. Pursley* involved the liability of a contractor who failed properly to erect

barricades in connection with roadways under construction. Neither case involved the duties imposed under Missouri law on a possessor of land which we discussed in part IV above.

The defendant contractor in *Morris v. Israel Brothers, Inc.,* like the defendant in *Chance v. City of St. Joseph,* introduced evidence that the driver of the automobile in which the plaintiff was riding was intoxicated. Plaintiff in *Morris,* however, testified positively that the driver was sober. The question of the intoxication of the driver, who was not the plaintiff in the case, was considered solely in connection with an instruction given by the State trial court. None of the cases cited by plaintiffs addressed the question of whether a plaintiff's decedent can be said to have been exercising ordinary care for his own safety when the undisputed factual circumstances establish that plaintiffs' decedent was, in fact, intoxicated at the time of the accident in which he lost his life.

We therefore find and conclude that the three cases relied upon by the plaintiffs all involved principles of law which are not applicable to the pending case and that each of those cases are distinguishable on their facts from the undisputed and stipulated factual circumstances presented in this case.

## VI.

Accordingly, and for the reasons above stated, it is

ORDERED that the Clerk of the Court, pursuant to Rule 58 of Federal Rules of Civil Procedure enter judgment on a separate document for the defendant United States of America and against the plaintiffs Elmer L. Morris and Ethel P. Morris.